# Matter of Armando RUIZ-LOPEZ, Respondent

*Decided June 30, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The offense of driving a vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle in violation of section 46.61.024 of the Revised Code of Washington is a crime involving moral turpitude.

(2)   The maximum sentence possible for an offense, rather than the standard range of sentencing under a State's sentencing guidelines, determines an alien's eligibility for the "petty offense" exception under section 212(a)(2)(A)(ii)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (2006).

FOR RESPONDENT:  H. Alan Rothenbuecher, Esquire, Cleveland, Ohio

FOR THE DEPARTMENT OF HOMELAND SECURITY:  G. Michael Wick, Assistant Chief Counsel

BEFORE:  Board Panel:  FILPPU, PAULEY, and WENDTLAND, Board Members.

WENDTLAND, Board Member:

In a decision dated December 8, 2008, an Immigration Judge found the respondent removable based on his inadmissibility under sections 212(a)(2)(A)(i)(I) and (6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) and (6)(A)(i) (2006), as an alien who was convicted of a crime involving moral turpitude and who was present in the United States without having been admitted or paroled.[1]  The Immigration Judge further determined that the respondent's conviction rendered him statutorily ineligible for cancellation of removal under section 240A(b) of the Act, 8 U.S.C. § 1229b(b) (2006).  The respondent has appealed from the Immigration Judge's decision.  The appeal will be dismissed.

---

[1] The Immigration Judge's decision incorporated a March 12, 2008, decision in which the question of the respondent's removability was addressed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without having been admitted or paroled.  On December 29, 1997, he was convicted of attempting to elude a pursuing police vehicle in violation of section 46.61.024 of the Revised Code of Washington, for which he was sentenced to 40 days in confinement.  Subsequently, the Department of Homeland Security ("DHS") charged that the respondent was inadmissible because he was convicted of a crime involving moral turpitude and was present in the United States without having been admitted or paroled.  The Immigration Judge sustained both charges and, finding the respondent ineligible for cancellation of removal, ordered him removed from the United States.

## II.  ANALYSIS

At the time of the respondent's conviction in 1997, section 46.61.024 of the Revised Code of Washington provided, in pertinent part, as follows:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.  The signal given by the police officer may be by hand, voice, emergency light, or siren.  The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

On appeal the respondent argues that his conviction was not for a crime involving moral turpitude.  Relying on our decision in *Matter of Khourn*, 21 I&N Dec. 1041, 1046 (1997), he notes that an evil intent is required for a finding of moral turpitude.  Although "a wanton or wilful disregard for the lives or property of others" must be established for a conviction under the Washington statute, the respondent contends that no showing of evil intent is necessary.  Conceding that his attempt to elude a police officer was a "wilful" act, the respondent claims that it was not committed with the evil intent generally associated with other crimes found to involve moral turpitude, such as the offense of aggravated fleeing discussed in *Mei v. Ashcroft*, 393 F.3d 737 (7th Cir. 2004).  Moreover, he asserts that "wanton disregard" equates to recklessness, which, under *Matter of Fualaau*, 21 I&N Dec. 475 (1996), must be coupled with the infliction of serious bodily injury for a finding of moral turpitude.

According to the respondent, a person can be convicted under section 46.61.024 based on a showing of wanton disregard for only property, without

any serious bodily harm. He asserts that such reckless harm to property has not been considered to be morally turpitudinous conduct under our decisions in *Matter of M–*, 2 I&N Dec. 686 (C.O., BIA 1946) (involving damage to railway telegraph property), and *Matter of B–*, 2 I&N Dec. 867 (C.O., BIA 1947) (involving willful damage to mail boxes and other property). Thus, the respondent concludes that the offense of attempting to elude a pursuing police vehicle under the Washington statute is not categorically a crime involving moral turpitude. Finally, he avers that even if he has been convicted of a crime involving moral turpitude, the "petty offense" exception under section 212(a)(2)(A)(ii)(II) of the Act applies, and he remains eligible for cancellation of removal under section 240A(b).

We first note that the Attorney General has provided a framework for determining whether a particular offense constitutes a crime involving moral turpitude. *See Matter of Silva-Trevino*, 24 I&N Dec. 687, 688-89, 696 (A.G. 2008) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005)). Pursuant to *Matter of Silva-Trevino*, the first stage of the analysis employs a categorical approach, under which the criminal statute at issue is examined to ascertain whether moral turpitude is intrinsic to all offenses that have a "realistic probability" of being prosecuted under that statute. *Id.* at 689-90, 696-98. If the issue cannot be resolved under the categorical approach, the second stage involves a modified categorical inquiry, which requires inspection of specific documents comprising the alien's record of conviction to discern the nature of the underlying conviction. *Id.* at 690, 698-99. Finally, if the record of conviction is inconclusive, the Attorney General has held that because moral turpitude is not an element of an offense, evidence beyond the record of conviction may be considered when evaluating whether an alien's crime involved moral turpitude. *Id.* at 690, 699-701.

We have long held that moral turpitude refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *See, e.g.*, *Matter of Solon*, 24 I&N Dec. 239, 240 (BIA 2007); *Matter of Torres-Varela*, 23 I&N Dec. 78, 83 (BIA 2001). Moral turpitude is conduct that is per se morally reprehensible and intrinsically wrong or malum in se. *See Matter of Fualaau*, 21 I&N Dec. at 477; *Matter of Franklin*, 20 I&N Dec. 867 (BIA 1994), *aff'd*, 72 F.3d 571 (8th Cir. 1995); *Matter of Serna*, 20 I&N Dec. 579, 582 (BIA 1992). Where knowing or intentional conduct is an element of a morally reprehensible offense, we have found moral turpitude to be present. *See, e.g.*, *Matter of Danesh*, 19 I&N Dec. 669, 673 (BIA 1988).

With regard to mens rea, the Attorney General has concluded that moral turpitude inheres in "reprehensible conduct that is committed intentionally or with some other form of scienter such as willfulness or recklessness."

*Matter of Silva-Trevino*, 24 I&N Dec. at 706 n.5. Quoting *Partyka v. Attorney General of the U.S.*, 417 F.3d 408, 414 (3d Cir. 2005), the Attorney General noted that "moral turpitude inheres in the commission of certain crimes 'even if one acts not with intent, but with recklessness.'" *Id.* (citing *Matter of Medina*, 15 I&N Dec. 611, 613 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977) (finding that aggravated assault under Illinois law was a crime involving moral turpitude where the statutory "definition of recklessness require[d] an actual awareness of the risk created by the criminal violator's actions" and "a willingness to commit the act in disregard of the perceived risk")). Thus, judicial and administrative precedents have recognized that "reckless disregard" can constitute the requisite "evil intent" for a crime involving moral turpitude under at least some circumstances.

The respondent cites to *Matter of Fualaau*, 21 I&N Dec. at 478, in support of his argument that in order to involve moral turpitude, an offense with a mens rea of recklessness must be coupled with the infliction of serious bodily injury. However, in *Matter of Medina*, 15 I&N Dec. at 613-14, which involved aggravated assault, we concluded that moral turpitude inhered in criminally reckless conduct with the use of a deadly weapon as an aggravating factor, but with no serious bodily injury. In addition, when we have held that a "recklessness" mens rea required either serious bodily injury or some other aggravating factor to establish moral turpitude, it was in the specific context of *assault* offenses. *See, e.g.*, *Matter of Solon*, 24 I&N Dec. at 242 (noting that the reasoning of our decisions reflects that "at least in the context of assault crimes, a finding of moral turpitude involves an assessment of both the state of mind and the level of harm required to complete the offense"). The respondent's offense did not involve assault, so we find his argument in this regard to be unpersuasive. Moreover, we note that as a general rule, "the seriousness of a criminal offense . . . is [not] determinative of whether a crime involves moral turpitude." *Matter of Sejas*, 24 I&N Dec. 236, 237 (BIA 2007) (citing *Matter of Serna*, 20 I&N Dec. at 581).

To support a conviction for the offense of attempting to elude a pursuing police officer under section 46.61.024 of the Revised Code of Washington, three elements must be shown to have occurred in the proper sequence. *State v. Duffy*, 936 P.2d 444, 446-47 (Wash. Ct. App. 1997). The first element is that a uniformed police officer whose vehicle is appropriately marked must give the driver of a motor vehicle a visual or audible signal to bring the vehicle to a stop. Next, the driver must willfully fail or refuse to immediately bring his vehicle to a stop—the willful failure to do so implies knowledge that a signal has been given. Finally, while attempting to elude a pursuing police vehicle, the driver must drive his vehicle in a manner indicating a wanton or willful disregard for the lives or property of others.

Construing this third element of the offense, the Supreme Court of Washington stated that "[t]he statute is absolutely clear that at the very least the manner in which one drives must indicate wanton and willful disregard" and concluded that this "crime of felony flight" "[o]bviously . . . does contain culpable mental elements." *State v. Sherman*, 653 P.2d 612, 615-16 (Wash. 1982) (en banc). In *State v. Mather*, 626 P.2d 44, 47 (Wash. Ct. App. 1981), the court observed that section 46.61.024 is a "resisting arrest" statute, which, in punishing conduct that indicates a wanton or willful disregard for the life and property of others, "punishes unreasonable conduct in resisting law enforcement activities." Regarding the phrase "wanton or willful disregard," it has been noted that

> [t]he usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the word used, is that the actor has *intentionally* done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.

*State v. Brown*, 697 P.2d 583, 586 (Wash. Ct. App. 1985) (quoting W. Prosser & W. Keeton, *Torts* § 34, at 213 (5th ed. 1984)) (emphasis added).

In *Mei v. Ashcroft*, 393 F.3d at 742, the United States Court of Appeals for the Seventh Circuit held that the Illinois offense of aggravated fleeing from a police officer is a crime involving moral turpitude. The offense involved the willful failure to obey a police officer's order to stop, with the aggravating circumstance that the offender was driving at 21 or more miles per hour above the speed limit. The court stated that "a person who deliberately flees at a high speed from an officer who, the fleer knows, wants him to stop, thus deliberately flouting lawful authority and endangering the officer, other drivers, passengers, and pedestrians, is deliberately engaged in seriously wrongful behavior." *Id.* As the court pointed out, while the driver may not want to endanger anyone, he has to know that he is greatly increasing the risk of an accident as a consequence of his deliberate and improper decision to ignore a lawful order of the police. *Id.* Thus, the court implicitly held that reckless disregard of a substantial risk of an injury-causing accident sufficed to justify a finding of moral turpitude.

Although *Mei v. Ashcroft* did not involve an offense containing an element of willful disregard for lives *or* property, the Seventh Circuit cited to a case that did. *People v. Dewey*, 49 Cal. Rptr. 2d 537, 541 (Cal. Ct. App. 1996), held that California's felony offense of fleeing or attempting to elude a pursuing peace officer by driving in willful or wanton disregard for the safety of persons or property was a crime involving moral turpitude. In so holding, the court cited to a decision rejecting the assertion that the

offense could not involve moral turpitude because an individual eluding a police officer might only be acting with the requisite disregard for the safety of property.

We find little distinction between the respondent's offense and those considered in *Mei v. Ashcroft* and *People v. Dewey*, both of which held that the crime involved moral turpitude. The respondent's conduct was similar to that involved in those cases, in that he willfully failed or refused to immediately bring his vehicle to a stop after a uniformed police officer in an appropriately marked vehicle gave him a signal to stop his motor vehicle and, while attempting to elude the pursuing police vehicle, drove his vehicle in a manner indicating a wanton and/or willful disregard for the risk of injury to another person or to property. Assuming arguendo that there is a "realistic probability" of prosecution under the Washington statute where the offense of attempting to elude a pursuing police vehicle was committed with a reckless disregard for only property, we find that moral turpitude necessarily inheres in such a crime, given the combination of circumstances involved. *See Matter of Silva-Trevino*, 24 I&N Dec. at 689-90, 696-98.

"The finding of moral turpitude . . . results from a building together of elements by which the criminalized conduct deviates further and further from the private and social duties that persons owe to one another and to society in general." *Matter of Lopez-Meza*, 22 I&N Dec. 1188, 1196 (BIA 1999). To violate the Washington statute, an individual must recklessly endanger the person or property of others in the course of impeding law enforcement activity by willfully disobeying a police officer's directive to stop. We conclude that when a person deliberately flouts lawful authority and recklessly endangers the officer, other drivers, passengers, pedestrians, or property, he or she is "engaged in seriously wrongful behavior" that violates the accepted rules of morality and the duties owed to society.[2] *Mei v. Ashcroft*, 393 F.3d at 742; *cf. Matter of Lopez-Meza*, 22 I&N Dec. at 1196 (holding that moral turpitude inhered in the offense of aggravated driving under the influence, which involved the combination of driving under the influence of intoxicating liquor or drugs and knowingly driving on a suspended,

---

[2] The respondent has cited *Matter of M–*, 2 I&N Dec. at 691, for the proposition that the willful disregard for the safety of property (versus that of lives) does not involve moral turpitude. We noted in that case that the statute did not require a "vicious or corrupt intent" and that "[t]he mere doing of anything which is *likely* to cause danger to valuable property, regardless of the actor's intent, is punishable." *Id.* Stating that the offense was "somewhat comparable to driving an automobile in a negligent manner," we concluded that it was not a crime involving moral turpitude. *Id.* Thus, in finding a lack of turpitude, we relied on the absence of a scienter requirement, rather than the fact that the wanton disregard related to the safety of property. We employed a similar analysis in *Matter of B–*, 2 I&N Dec. at 868-69, on which the respondent also relies.

canceled, revoked, or refused license); *Matter of S–*, 3 I&N Dec. 617 (C.O., BIA 1949) (holding that an offense involved moral turpitude when it required proof that the defendant willfully (defined by Canadian law as being reckless as to whether an event happened or not), and without legal justification, committed an act while knowing it would probably cause a fire). *See generally Sykes v. United States*, No. 09-11311, 2011 WL 2224437, at *6 (U.S. June 9, 2011) ("Confrontation with police is the expected result of vehicle flight. It places property and persons at serious risk of injury.").

We also find that the respondent is not eligible for the "petty offense" exception under section 212(a)(2)(A)(ii)(II) of the Act, because the maximum penalty for the crime of which he was convicted is 5 years of imprisonment.[3] He asserts that the standard range of sentencing for his offense was from 0 to 60 days under the State of Washington's Sentencing Guidelines. However, the presumptive sentence is not the maximum sentence possible. Although the respondent was only sentenced to a term of imprisonment of 40 days, the judgment and sentence stated that the maximum term of imprisonment for the crime to which he pled guilty was 5 years. Consequently, we conclude that the "petty offense" exception is inapplicable and that the respondent is inadmissible, and therefore removable, under section 212(a)(2)(A)(i)(I) of the Act.

To qualify for some form of relief or protection from removal, the respondent bears the burden of demonstrating his eligibility. Section 240(c)(4)(A) of the Act, 8 U.S.C. § 1229a(c)(4)(A) (2006). Because his conviction for a crime involving moral turpitude does not come within the "petty offense" exception, he has been convicted of an offense described under section 212(a)(2) of the Act and is therefore ineligible for cancellation of removal under section 240A(b)(1)(C) of the Act.[4] In view of our conclusions that the respondent is removable and ineligible for relief, we need not address the remaining arguments presented on appeal. Accordingly, the appeal will be dismissed.[5]

---

[3] The statute provides that the "petty offense" exception applies where "the maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and . . . the alien was not sentenced to a term of imprisonment in excess of 6 months."

[4] The respondent also appears to be ineligible for cancellation of removal on the basis that his offense constitutes a crime involving moral turpitude described under section 237(a)(2)(A)(i) of the Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2006), given that the maximum term of imprisonment for the offense is at least 1 year. *See Matter of Pedroza*, 25 I&N Dec. 312 (BIA 2010); *Matter of Cortez*, 25 I&N Dec. 301 (BIA 2010).

[5] The respondent also had taken issue with the manner in which the Immigration Judge conducted his removal proceedings, arguing that this resulted in a denial of due process. He

(continued...)

**ORDER:**  The appeal is dismissed.

---

(...continued)

asserted that the Immigration Judge assumed the role of prosecutor by interrogating the respondent about his criminal record, tax compliance, and other matters during the course of direct examination, thereby interrupting the questioning of the respondent by his attorney.

However, we need not reach the merits of the respondent's allegations, because he has suffered no prejudice as a result of the timing of the Immigration Judge's questions. Given our conclusion that the respondent is removable because of his conviction for a crime involving moral turpitude, he is ineligible for cancellation of removal as a matter of law. Consequently, the outcome of his proceedings could not have been affected in any material way by the Immigration Judge's method of conducting questioning. Likewise, the respondent has not suffered prejudice from any other determinations made by the Immigration Judge that he now contests.