RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
————————————

ARMANDO RUIZ-LOPEZ,

                *Petitioner,*

     *v.*

ERIC H. HOLDER, JR.,

                *Respondent.*

No. 11-3730

On Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A098-231-109.

Decided and Filed: June 19, 2012

Before: MOORE, ROGERS and GRIFFIN, Circuit Judges.

————————————

**COUNSEL**

**ON BRIEF:** H. Alan Rothenbuecher, SCOTTENSTEIN ZOX & DUNN CO., L.P.A.,
Cleveland, Ohio, for Petitioner. Jessica Segall, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge. Petitioner Armando Ruiz-Lopez
seeks review of a final order of the Board of Immigration Appeals ("BIA") dismissing
his appeal of an immigration judge's ("IJ") order of removal. Ruiz-Lopez's removal
order was based on the IJ's finding that he was inadmissible under the Immigration and
Nationality Act ("INA") due to a state-court conviction for felony flight, which the IJ
and BIA classified as a crime involving moral turpitude ("CIMT"). Because the BIA

1

correctly concluded that the elements of Ruiz-Lopez's crime of conviction meet the BIA's definition of a CIMT, we **DENY** his petition for review.

## I. BACKGROUND

Ruiz-Lopez is a native and citizen of Mexico. He entered the United States illegally in 1991, and has remained in the country almost continuously since that time. Ruiz-Lopez is married and has three children. By all accounts, he is "a devoted husband and parent," "a good businessman," and a positive force in his community. Administrative Record ("A.R.") at 126–27 (IJ's Oral Decision at 21–22). In 1997, however, Ruiz-Lopez, who was then living in Washington state, pleaded guilty to one count of felony flight after attempting to elude a police officer who had signaled Ruiz-Lopez to stop. According to a probable-cause affidavit submitted at the time of the incident, officers in a marked police vehicle had signaled Ruiz-Lopez to pull over after observing him traveling at 65 miles per hour in a 30-mile-per-hour speed zone just before 2:00 a.m. The officers activated the siren, but Ruiz-Lopez continued driving at high speed until poor visibility forced him to slow down. Finally, slightly less than a mile from where officers first signaled for him to stop, Ruiz-Lopez turned rapidly into the driveway of his residence, where officers immediately placed him under arrest. Although the statute under which Ruiz-Lopez was convicted carried a maximum term of five years in prison, Ruiz-Lopez, who was a first-time offender, received a sentence of only forty days in prison and twenty-four months of community supervision.

On February 17, 2006, the Immigration and Naturalization Service issued Ruiz-Lopez a Notice to Appear, charging him with removability under two sections of the INA: § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), which permits removal of "an alien present in the United States without being admitted or paroled," and § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), which permits removal of "an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude." A.R. at 1075 (Notice to Appear). At his removal hearing, Ruiz-Lopez conceded the first ground

for removability but challenged the second ground on the basis that his conviction did not constitute a CIMT.

Following briefing on the issue, the IJ concluded that because of the wanton or willful mental state required under the state statute and the resulting inference that Ruiz-Lopez had "disregarded a substantial and unjustifiable risk to the safety of others," his conviction under § 46.61.024 of the Washington Revised Code in 1997 categorically rose to the level of a CIMT. A.R. at 1032–33 (Mar. 12, 2008 IJ Decision at 2–3). Because the IJ also determined that Ruiz-Lopez had not met the requirements for cancellation of removal and that the circumstances of the case did not warrant a favorable exercise of discretion, the IJ ordered Ruiz-Lopez removed.

Ruiz-Lopez then filed a motion to reconsider, arguing (1) that an offense that required only a reckless mental state cannot constitute a CIMT, and (2) that the disjunctive use of "lives or property" in the state statute implicated non-CIMT offenses, thereby rendering the IJ's use of the categorical approach improper. The IJ rejected both arguments, noting that Washington courts held the wanton or willful mental state to require a higher standard than mere recklessness and that those courts had not differentiated between risk to persons and risk to property, instead broadly interpreting the felony-flight statute to require "a willful or wanton disregard for the safety of others." A.R. at 977 (Mar. 28, 2008 Order on Mot. to Reconsider at 2) (quoting *State v. Brown*, 697 P.2d 583, 586 (Wash. Ct. App. 1985)).

In a published decision on June 30, 2011, the BIA likewise determined that, as a categorical matter, "[t]he offense of driving a vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle in violation of section 46.61.024 of the Revised Code of Washington is a crime involving moral turpitude." *Ruiz-Lopez*, 25 I. & N. Dec. 551, 551 (BIA 2011).[1] Specifically, the BIA concluded, "when a person deliberately flouts lawful

---

[1] The BIA also concluded that the five-year maximum sentence for Ruiz-Lopez's offense made it ineligible for the "petty offense" exception under § 212(a)(2)(A)(ii)(II) of the INA, 8 U.S.C. § 1182(a)(2)(A)(ii)(II). *Ruiz-Lopez*, 25 I. & N. Dec. 551, 557 (BIA 2011). That issue has not been raised in this appeal.

authority and recklessly endangers the officer, other drivers, passengers, pedestrians, or property, he is 'engaged in seriously wrongful behavior' that violates the accepted rules of morality and the duties owed to society." *Id.* at 556 (quoting *Mei v. Ashcroft*, 393 F.3d 737, 742 (7th Cir. 2004)). Accordingly, the BIA dismissed Ruiz-Lopez's appeal. Ruiz-Lopez now petitions this court for review of the BIA's final order.

## II. LAW AND ANALYSIS

### A. Jurisdiction

We first address the scope of our jurisdiction in this case. Because the BIA did not adopt the IJ's decision, we review the BIA's decision as the final agency action. *Kellermann v. Holder*, 592 F.3d 700, 702 (6th Cir. 2010). Our review, however, is somewhat circumscribed. As a general matter, we lack jurisdiction to review the removal orders of petitioners deemed removable for having committed a CIMT. *Id.* We nevertheless have limited jurisdiction to review questions of law and constitutional claims arising from such orders. 8 U.S.C. § 1252(a)(2)(D); *Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009). Because the question whether Ruiz-Lopez's conviction for felony flight under § 46.61.024 of the Washington Revised Code is a CIMT is a question of law, we retain jurisdiction to review his claim. *Id.* If we determine that the BIA properly classified the conviction as a CIMT, however, we have no further jurisdiction to review Ruiz-Lopez's removal order. *Jaadan v. Gonzales*, 211 F. App'x 422, 426 (6th Cir. 2006) (unpublished opinion).

### B. Standard of Review

The BIA's construction of ambiguous statutory provisions—such as the term "crime involving moral turpitude"—is generally entitled to *Chevron* deference. *Kellermann*, 592 F.3d at 702–03; *cf. INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[T]he BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication[.]'" (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987)). As a result, "we must uphold the BIA's construction [of the definition of a CIMT] unless it is 'arbitrary, capricious, or

manifestly contrary to the statute.'" *Kellermann*, 592 F.3d at 702 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)). "No deference is given, however, to the BIA's interpretation of a state criminal statute; that issue is reviewed de novo." *Serrato-Soto*, 570 F.3d at 688.

At times it may be difficult to apply these principles when the answer to the question of whether a particular crime is a CIMT may require some interpretation of *both* the criminal statute and the INA term "crime involving moral turpitude." *See, e.g.*, *Kellermann*, 592 F.3d at 703 (applying de novo review to the question "whether the elements of a federal [or state] crime fit the BIA's definition of a CIMT"); *Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005) (giving de novo review to the question whether "a particular state conviction amounts to an aggravated felony" under the INA "because such a conclusion depends upon interpreting state statutes and federal statutes unrelated to immigration"). There is no such difficulty in this case, however, as our independent analysis below agrees with the BIA's determination, so that we need not determine the precise extent to which *Chevron* deference would otherwise apply in this case.

## C. Felony Flight as a CIMT

Ruiz-Lopez challenges the BIA's determination that felony flight as defined by the Washington statute under which he was convicted categorically constitutes a CIMT. Specifically, Ruiz-Lopez maintains that the possibility of conviction for an offense involving a danger only to property brings non-CIMT offenses within the statute's purview, thereby leading to the conclusion that the BIA erred in failing to use a modified-categorical approach.

The Washington statute under which Ruiz-Lopez was convicted provided:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be

> by hand, voice, emergency light, or siren.  The officer giving such a
> signal shall be in uniform and his vehicle shall be appropriately marked
> showing it to be an official police vehicle.

Wash. Rev. Code § 46.61.024 (1983).  As interpreted by the Washington courts, conviction under the statute thus required proof that (1) "a uniformed police officer whose vehicle is appropriately marked [gave] the potentially errant driver of a motor vehicle 'a visual or audible signal to bring the vehicle to a stop,'" (2) the driver "'wilfully fail[ed] or refuse[d] to immediately bring his vehicle to a stop,'" and (3) "'while attempting to elude a pursuing police vehicle,' the driver '[drove] his vehicle in a manner indicating a wanton and [or] wilful disregard for the lives or property of another.'"  *State v. Stayton*, 691 P.2d 596, 598 (Wash. Ct. App. 1984) (final alteration in original) (citing *State v. Sherman*, 653 P.2d 612, 615 (Wash. 1982)).[2]  The Supreme Court of Washington also has indicated that, as compared with misdemeanor flight offenses, "[w]illful and wanton disregard while eluding the police has a cumulative effect, which heightens public interest and warrants more severe punishment." *Sherman*, 653 P.2d at 617; *accord Gallegos*, 871 P.2d at 624 (stating that the statute was "designed to address the dangers of high-speed chases," and clarifying that the statute is not violated if the defendant merely fails to immediately stop without also "engag[ing] in conduct that indicates a wanton [or] wilful disregard for the life and property of others" (second alteration in original) (internal quotation marks omitted)); *Brown*, 697 P.2d at 586 ("'The statute is absolutely clear that at the very least the manner in which one

---

[2]*State v. Sherman* was decided under the original 1979 version of the statute, which used the phrase "wanton *and* wilful."  *State v. Stayton*, 691 P.2d 596, 597 n.1 (Wash. Ct. App. 1984) (emphasis added).  In 1982, the Washington legislature amended the statute to read "wanton *or* wilful."  *Id.* (emphasis added).  Further amendments were added in 1983, but they are not relevant to this appeal.  *Id.*  We will address only the 1983 version of the statute, because that was the statute in force at the time of Ruiz-Lopez's offense.

Notably, in spite of the legislative change to "wanton or wilful," it appears that Washington courts continued to rely on *Sherman*'s general interpretation of the statute until the most recent amendment in 2003 lowered the mens rea to recklessness for the third element of the offense.  *See, e.g.*, *State v. Tandecki*, 109 P.3d 398, 400–01 (Wash. 2005) (reaffirming *Sherman*); *State v. Gallegos*, 871 P.2d 621, 624 (Wash. Ct. App. 1994) (citing *Sherman* when analyzing the requirements under the statute); *State v. Myers*, No. 33692-8-II, 2006 WL 3004090, at *7 & n.14 (Wash. Ct. App. Oct. 17, 2006) (unpublished opinion) (discussing the *Sherman* jury instruction regarding "wanton and willful disregard" and surmising that the instruction is no longer relevant in light of the 2003 amendment).

drives must indicate wanton [or] willful disregard.'" (quoting *Sherman*, 653 P.2d at 615)).[3]

The ensuing question, whether the elements as set forth in the state statute and as interpreted by the state courts fit the BIA's definition of a CIMT, involves a two-step analysis.  Using the same method of analysis as the BIA, we first employ a "categorical approach."  Under that step, we are constrained to look not at the petitioner's actual conduct but rather at "'the inherent nature of the crime[s] as defined by statute and interpreted by the courts and as limited and described by the record of conviction' to determine whether the offenses are ones involving moral turpitude for purposes of the deportation statute." *Kellermann*, 592 F.3d at 704 (alteration in original) (quoting *Short*, 20 I. & N. Dec. 136, 137 (BIA 1989)).  If all offenses under the statute necessarily meet the definition of a CIMT, the analysis ends.  If, on the other hand, some offenses contemplated by the statute do not fit the BIA's definition of a CIMT, we move to the modified-categorical approach, which examines certain record documents to determine whether the petitioner's specific offense under the statute qualifies as a CIMT.  *Id.* at 703–04.

Proceeding under this framework, we turn now to whether the elements of Washington's felony-flight statute as they existed at the time of Ruiz-Lopez's conviction categorically qualify as a CIMT.  Initially, this requires some discussion of the BIA's definitional structure for CIMTs, which, on account of both the ambiguity inherent in the phrase "moral turpitude" and the BIA's method of case-by-case adjudication, necessarily involves a somewhat unsettled issue. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 909–10 (9th Cir. 2009) (en banc), *cert. denied*, 130 S. Ct. 1011 (2009); *Singh v. Holder*, 321 F. App'x 473, 477 (6th Cir. 2009) (noting that "'[t]he precise meaning of "moral turpitude" . . . has never been fully settled'" (second alteration in original) (quoting *Torres-Varela*, 23 I. & N. Dec. 78, 83 (BIA 2001)).

---

[3]While the BIA interpreted the statute of conviction as prohibiting mere reckless conduct, the Washington state courts have made clear that "'willful or wanton' is a 'higher mental state' than 'reckless.'" *State v. Ridgley*, 174 P.3d 105, 111 (Wash. Ct. App. 2007) (quoting *State v. Roggenkamp*, 106 P.3d 196, 202 (Wash. 2005)).  We express no opinion regarding whether flight accompanied by only a reckless mens rea also categorically meets the BIA's definition of a CIMT.

Generally speaking, morally turpitudinous conduct has involved that which "is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Kellermann*, 592 F.3d at 703 (internal quotation marks omitted). More helpfully, the BIA recently clarified that "[a] finding of moral turpitude under the [INA] requires that a perpetrator have committed the reprehensible act with some form of scienter"; thus, "'where knowledge is a necessary element of a crime under a particular criminal statute, moral turpitude inheres in that crime'" if the crime also involves some sort of reprehensible conduct. *Silva-Trevino*, 24 I. & N. Dec. 687, 706 & n.5 (BIA 2008) (quoting *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000)); *see also Perez-Contreras*, 20 I. & N. Dec. 615, 618 (BIA 1992) ("Where knowing or intentional conduct is an element of the offense, we have found moral turpitude to be present.").

Discerning whether the conduct qualifies as "reprehensible" adds another layer of complexity. Although not a universal rule, offenses that can be classified as "malum in se" generally do involve moral turpitude, while those classified as "malum prohibitum" do not. *Torres-Varela*, 23 I. & N. Dec. at 84. Moreover, certain categories of crimes are easily classified as involving moral turpitude, such as those with an element of fraud or those that involve a certain degree of "baseness or depravity," such as murder, rape, robbery, kidnapping, abuse, or some forms of aggravated assault. *Id.*; *Lopez-Meza*, 22 I. & N. Dec. 1188, 1193 (BIA 1999). Other categories require a more case-specific analysis. *Torres-Varela*, 23 I. & N. Dec. at 84. For instance, the BIA has determined that a simple DUI offense, though contrary to societal standards, is not a CIMT, but aggravated DUI, in which a person drives under the influence with knowledge that he or she also lacks a valid driver's license, is a CIMT. *Lopez-Meza*, 22 I. & N. Dec. at 1195–96. In drawing this distinction, the BIA reasoned that the additional mental culpability present when driving both under the influence *and* with knowledge that driving is prohibited renders the aggravated form of the crime "so base and so contrary to the currently accepted duties that persons owe to one another and to society in general that it involves moral turpitude." *Id.* at 1196.

Although these decisions shed some light on the scope of the BIA's definition of a CIMT, the BIA had not specifically addressed in a published decision prior to this case the question whether a crime akin to attempting to elude a pursuing police vehicle constitutes a CIMT. Two of our sister circuits, however, have addressed analogous statutes, and both affirmed the BIA's unpublished determinations that the relevant offenses qualified as CIMTs.

The first of these cases was *Mei v. Ashcroft*, 393 F.3d 737 (7th Cir. 2004). There, the petitioner stood convicted of "aggravated fleeing from a police officer," in violation of a statute that prohibited the willful failure to stop for a signaling police officer and subsequently attempting to flee the police vehicle at speeds of twenty-one or more miles per hour above the posted limit. *Id.* at 738, 741–42. Without resorting to a modified-categorical analysis, the Seventh Circuit concluded that "a person who deliberately flees at a high speed from an officer who, the fleer knows, wants him to stop, thus deliberately flouting lawful authority and endangering the officer, other drivers, passengers, and pedestrians, is deliberately engaged in seriously wrongful behavior" amounting to a CIMT. *Id.* at 742. The Fifth Circuit concluded likewise in *Pulido-Alatorre v. Holder*, 381 F. App'x 355, 359 (5th Cir. 2010). In that case, the petitioner pleaded guilty to intentionally fleeing from a peace officer while in a motor vehicle. *Id.* at 358–59. The BIA concluded that "such conduct reflects an awareness and conscious disregard of a substantial and unjustifiable risk," and the Fifth Circuit upheld that determination as a reasonable one.[4] *Id.* at 359.

In an attempt to distinguish the unfavorable precedents of the courts and the BIA, Ruiz-Lopez maintains that the disjunctive nature of the Washington statute—namely, that it prohibited conduct that manifests a "wanton or wilful disregard for the lives *or* property of others," § 46.61.024 (emphasis added)—renders the categorical analysis impossible because only endangering life would constitute a CIMT. As support for this

---

[4]Because certain provisions under the statute, such as misdemeanor simple flight or the felony enhancement for repeat offenders, would not have qualified as CIMTs, the BIA made its determination in *Pulido-Alatorre* under the modified-categorical approach that relied on the petitioner's guilty plea identifying the relevant subsection—felony flight in a motor vehicle.

proposition, Ruiz-Lopez cites a recent amendment to the Washington felony-flight statute that provides greater punishment for endangering life as opposed to property and to a recent Ninth Circuit decision that considered the same Washington statute under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Neither is dispositive here.

The most recent version of Washington Revised Code § 46.61.024 prohibits willfully failing to stop and then driving "in a reckless manner while attempting to elude a pursuing police vehicle." Wash. Rev. Code § 46.61.024 (2003). As Ruiz-Lopez points out, the Washington legislature also added a provision in 2008 that permits enhanced punishment where such an attempt resulted in a threat of injury to persons other than the defendant or the pursuing officer. Wash. Rev. Code § 9.94A.834 (2008). We take no position on whether these changes to the sentencing provisions and the requisite mens rea under § 46.61.024 would require a court to use a modified-categorical analysis. Instead, we focus on the statute under which Ruiz-Lopez was convicted, which made no similar distinctions. Accordingly, the amended version is irrelevant to our determination whether willful flight coupled with a wanton or willful disregard for lives or property, which was the conduct required for conviction under the statute in force at the time of Ruiz-Lopez's offense, meets the BIA's definition of a CIMT.

Ruiz-Lopez's attempt to extend the Ninth Circuit's reasoning in *United States v. Jennings*, 515 F.3d 980 (9th Cir. 2008), fares no better. In *Jennings*, the Ninth Circuit evaluated the same felony-flight statute in the context of determining whether the statute categorically constituted a violent felony under the ACCA. *Id.* at 989. Because the "or property" language in the statute would have permitted conviction even if the defendant's conduct did not pose a serious risk of harm to any person, the court concluded that the statute did not qualify as a violent felony under the ACCA. *Id.* at 992–93.

Although it is true that the analytical processes for determining qualifying crimes under the ACCA and § 212(a)(2)(A)(i)(I) of the INA are similar, the mere fact that a statute is not categorically a violent felony does not preclude it from categorically qualifying as a CIMT. By definition, the category of crimes that qualify as a CIMT is

considerably broader than that covered by the ACCA. Indeed, the CIMT category of crimes contains myriad offenses that involve no physical-injury element and therefore could not qualify under the ACCA. *See, e.g.*, *Serrato-Soto*, 570 F.3d at 690, 692 (concluding that fraudulent use of a Social Security number is a CIMT). Moreover, unlike the ACCA, that an offense involves risk only to property is not dispositive to the categorical analysis as applied under the INA. *See, e.g.*, *Serna*, 20 I. & N. Dec. 579, 585 n.10 (BIA 1992) (noting that knowledge coupled with intent to harm property can constitute a CIMT); *cf. M--*, 3 I. & N. Dec. 272, 273 (BIA 1948) (concluding that "maliciously and wantonly injur[ing] and destroy[ing] certain personal property of another" by, in that case, killing another man's hogs, was a CIMT). Accordingly, the possibility that the Washington statute could punish wanton or willful conduct that creates a risk only to property is not alone enough to bring a non-CIMT offense within the statutory terms.[5] That being the case, the court has no need to resort to the modified-categorical approach.[6]

Based on these agency and judicial precedents, the BIA was not remiss in concluding that, given the nature of the felony-flight statute under which Ruiz-Lopez was convicted, "moral turpitude necessarily inheres in such a crime, given the combination of circumstances involved." *Ruiz-Lopez*, 25 I. & N. Dec. at 556. Indeed, both elements of the BIA's two-pronged definition of a CIMT set forth in *Silva-Trevino*

---

[5]Notably, although Ruiz-Lopez maintains that his offense involved only a danger to property, it is impossible to reach that conclusion based solely on the statute. Although the specific facts of Ruiz-Lopez's conviction are compelling, under the categorical approach we cannot consider them and instead are confined to reviewing the elements of the statute of conviction. *Serrato-Soto*, 570 F.3d at 690; *Silva-Trevino*, 24 I. & N. Dec. at 688.

[6]Ruiz-Lopez also points to a recent First Circuit case, *Palmeira Da Silva Neto v. Holder*, --- F.3d ----, 2012 WL 1648909 (1st Cir. May 10, 2012), as support for his assertion that the modified-categorical approach should apply to the Washington state statute at issue here. *Palmeira* involved the question whether malicious destruction of property, as defined by Massachusetts state law, constituted a CIMT. *Id.* at *3. Although the petitioner in that case pleaded to willful and malicious destruction of property, the same subsection of the state statute at issue also prohibited wanton destruction of property, which Massachusetts law defined as requiring a mens rea akin only to recklessness. *Id.* Accordingly, the First Circuit applied the modified-categorical approach in determining that the petitioner's crime was a CIMT.

In contrast, although § 46.61.024 of the Washington Revised Code similarly bars wanton conduct, Washington courts have made clear that the mens rea required under § 46.61.024 is more than mere recklessness. *See, e.g.*, *Ridgley*, 174 P.3d at 111. Moreover, because those courts have treated the "wanton or willful disregard" standard as effectively a single mens rea requirement, the foundation in *Palmeira* for applying the modified-categorical approach—language in the statute of conviction that distinguished between forms of mens rea and punished them with increasing severity—is not present here.

are present here.  *See Silva-Trevino*, 24 I. & N. Dec. at 706 & n.5 (defining a CIMT as involving both scienter and reprehensible conduct).  The element of "wanton or willful disregard" clearly fulfills the requisite scienter component, and cases such as *Mei* and *Pulido-Alatorre* show that intentionally fleeing from a police vehicle qualifies as the type of societally condemned, reprehensible conduct that is reasonably encompassed by the BIA's general definition of a CIMT.  The BIA therefore properly concluded that Ruiz-Lopez's conviction under § 46.61.024 of the Washington Revised Code was sufficient as a categorical matter to constitute a crime involving moral turpitude.

### III.  CONCLUSION

The BIA reasonably concluded that the elements of the felony-flight statute under which Ruiz-Lopez was convicted fall within the BIA's definition of a CIMT. Accordingly, we **DENY** Ruiz-Lopez's petition for review.