**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| JOSE JUAN MEDINA-NUNEZ, | No. 14-70657 |
| Petitioner, | B.I.A. No. A070-736-545 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 13, 2015
San Francisco, California

Before: KOZINSKI and GRABER, Circuit Judges, and PONSOR,** Senior
District Judge.

Petitioner Jose Juan Medina-Nunez petitions for review of the Board of

Immigration Appeals' ("BIA") determination that he is removable under 8 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Michael A. Ponsor, Senior United States District Judge
for the District of Massachusetts, sitting by designation.

§ 1227(a)(2)(A)(i) because he committed a crime involving moral turpitude.  For the reasons below, we deny the petition.[1]

The BIA properly held that Petitioner's felony conviction under California Vehicle Code section 2800.2(a) for "elud[ing] a pursuing peace officer . . . [while driving a vehicle] in a willful or wanton disregard for the safety of persons or property" categorically constituted a crime involving moral turpitude.  In In re Ruiz-Lopez, 25 I. & N. Dec. 551 (B.I.A. 2011), petition for review denied, 682 F.3d 513 (6th Cir. 2012), the BIA held that the Washington crime, eluding a pursuing police vehicle, Wash. Rev. Code § 46.61.024, is categorically a crime involving moral turpitude.  "[W]hen a person deliberately flouts lawful authority and recklessly endangers the officer, other drivers, passengers, pedestrians, or property, he or she is engaged in seriously wrongful behavior that violates the accepted rules of morality and the duties owed to society."  In re Ruiz-Lopez, 25 I. & N. Dec. at 556 (internal quotation marks omitted).  We owe deference to In re Ruiz-Lopez under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

---

[1] Petitioner also seeks review of the BIA's denial of his application for cancellation of removal.  In an opinion filed concurrently with this disposition, we conclude that the BIA correctly denied his application for cancellation of removal.

The BIA reasonably relied on In re Ruiz-Lopez because there is no material difference between the Washington and California statutes. Section 2800.2(a) defines the elements of the crime. To violate the California statute, the defendant must "deliberately flout[] lawful authority" by fleeing or attempting to elude a pursuing officer, In re Ruiz-Lopez, 25 I. & N. Dec. at 556, just as the Washington statute requires; and the defendant must also "recklessly endanger[] the officer, other drivers, passengers, pedestrians, or property," id., again as is true in Washington. See Penuliar v. Mukasey, 528 F.3d 603, 609–10 (9th Cir. 2008) (holding that, under California law, section 2800.2 requires a "reckless" mens rea), overruled in part on other grounds by Sykes v. United States, 131 S. Ct. 2267 (2011); see also People v. Pinkston, 5 Cal. Rptr. 3d 274, 278, 280 (Ct. App. 2003) (rejecting the argument that section 2800.2(b) allows "the jury to find the element of willful or wanton disregard without conducting an independent evaluation of the evidence to determine the existence of that element," reasoning that the section "merely defines, in precise terms, one way in which the People may prove the element of willful or wanton disregard for the safety of persons or property"). The potential for harm to persons or property is not reduced below the level of moral turpitude simply because, under section 2800.2(b), willful or wanton disregard for the safety of persons or property may be proved by showing that the defendant

3

committed three or more traffic violations while fleeing or attempting to elude the pursuing peace officer.

**Petition DENIED.**

Jose Medina-Nunez v. Eric Holder, Jr., 14-70657

PONSOR, Senior District Judge, dissenting:

I respectfully dissent.

The majority's opinion, I believe, over-extends the category of crimes that constitute expressions of so called "moral turpitude," particularly in light of our recent examination of this phrase in *Hernandez-Gonzalez v. Holder*, 778 F.3d 793 (9th Cir. 2015), a decision handed down subsequent to the briefing in this case.

As a threshold matter, I disagree that the BIA conclusion that Petitioner's violation of § 2800.2 did fall into the category of "moral turpitude" is entitled to deference, either under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944). Even if deference were proper, which it is not, two considerations satisfy me that the agency's interpretation is so unreasonable that it would be unsustainable. *Cf. Hernandez-Gonzalez,* 778 F.3d at 807 (rejecting BIA conclusion regarding "moral turpitude" even while applying *Chevron* deference).

First, the BIA opinion never actually looked at the substance of the California statute itself. Very significantly, it entirely disregarded § 2800.2(b), which is crucial to any categorical analysis of the statute pursuant to *Taylor v. United States,* 495 U.S. 575 (1990). So far as appears from its written decision, the BIA merely

1

noted the statute's general target (persons eluding the police), pushed the "search" button, found other statutes in other states aimed at the same general group whose violation had been found to constitute "moral turpitude," and concluded that violation of § 2800.2 also constituted a crime of "moral turpitude." As a mode of analysis worthy of deference, this will not do.

Second, the BIA opinion never examined whether the supposedly analogous statutes from other states carrying the "eluding the police" label (or some such) in fact rendered criminal the same scope of wrongful conduct that the California statute encompasses. If the BIA had done this, it would have found that the California statute is actually different from, and significantly broader than, the other statutes it cited.

We have made it clear that this court will give deference to an unpublished BIA decision, such as the decision in this case, *only* where that unpublished decision is "directly controlled by a published decision interpreting the same statute." *Castrijon-Garcia v. Holder,* 704 F.3d 1205, 1210 (9th Cir. 2013) (internal quotations omitted). Here, the unpublished BIA decision cites to no such controlling authority. Instead, it relies on *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551 (BIA 2011), *aff'd Ruiz-Lopez v. Holder*, 682 F.3d 513 (6th Cir. 2012), which involved a Washington statute that generally addressed the offense of eluding the

2

police but lacked any provision analogous to § 2800.2(b).

It is true that in some cases where deference based on a controlling authority is not justified we will nevertheless defer to the agency decision, if it is thoroughly analyzed and sufficiently well reasoned that it has the "power to persuade, if lacking [the] power to control." *Skidmore*, 323 U.S. at 140. In this case, for the two reasons noted above, the BIA decision cannot remotely be described as persuasive.

Courts have taken various positions with regard to whether a BIA decision to classify a crime as one involving "moral turpitude" is entitled to deference. *See Mei v. Ashcroft*, 393 F.3d 737, 739 (7th Cir. 2004) (gathering cases). It is significant that even where the court defers, the ultimate decision will not necessarily favor the BIA. In *Hernandez-Gonzalez*, the court found that *Chevron* deference did apply, but nevertheless rejected the BIA's "moral turpitude" conclusion "because the BIA failed to explain why the offense [in question there] constituted conduct that is inherently base, vile or depraved as opposed to simply criminal conduct that society rejects." 778 F.3d at 807. Similarly in this case, even if the BIA decision were entitled to deference, its analysis is so poorly reasoned and conclusory that it amounts to "no analysis at all." *Castrijon-Garcia,* 704 F.3d at 1211.

Determining whether a conviction under a particular state statute is categorically a crime of "moral turpitude" involves a two-step process. *Ceron v.*

3

*Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc). First, the court must identify the elements of the statute at issue. Following that, the court must compare the identified elements with the generic definition of "moral turpitude" and decide "whether the conviction meets that definition." *Id.* A different standard of review applies to each step of this analysis. *Marmolejo-Campos v. Holder*, 558 F.3d 903 907-08 (9th Cir. 2009). The BIA's identification of the elements of a crime is reviewed *de novo. Hernandez-Gonzalez*, 778 F.3d at 798. With regard to the comparison of these elements with the generic definition of a crime of "moral turpitude," we "defer to [the BIA's] conclusion if warranted, following the *Chevron* framework if the decision is published or directly controlled by a published decision, and otherwise following the *Skidmore* framework." *Id.* (internal quotations omitted). For the reasons set forth above, I do not believe deference here, even on the second step, is warranted.

As a preamble to a proper review of the BIA decision, one point must be made emphatically. Eluding the police is a crime, usually a serious crime, and it deserves punishment. That is not the issue. The issue is whether the California statute before us sweeps in not only the most dangerous expressions of this crime, but also far less dangerous behavior that does no harm and intends no harm. Moreover, even recognizing that eluding the police always entails *some* risk of

4

harm, the less serious manifestations of conduct covered by § 2800.2(b) involve nothing like the level of potential risk that we and other courts have recognized as involving "moral turpitude."

This feature of the California statute is, of course, crucial because our analysis of § 2800.2 must be categorical. This means that we "compare the elements of the crime to the generic definition of moral turpitude and decide whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition." *Castrijon-Garcia*, 704 F.3d at 1212. Under this approach, all violations of this statute that have a "realistic probability" of being prosecuted must involve "moral turpitude." *Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010).[1]

Section 2800.2 essentially has two elements. First, under § 2800.2(a), a person must flee or attempt to elude a police officer. Second, that person must flee while driving with willful or wanton disregard for the safety of persons or property. Section 2800.2(b) defines "willful or wanton disregard" to include conduct that involves three minor traffic violations or damage to property. A conviction based on violation of this statute does not require harm or intent to harm. A violation may

_____

[1] Respondent does not suggest that the so called "modified" categorical analysis should be applied here.

be found in a situation where the defendant evaded the police while driving without a seatbelt, failing to stop at a traffic signal, and exceeding the speed limit.  *People v. Laughlin*, 137 Cal. App. 4th 1020, 1023 (2006).

Turning from the elements of the crime to examine the BIA decision , we are compelled to confront the question of what precisely is meant by the faintly ridiculous, Micawberesque phrase "moral turpitude."   Over sixty years ago, Justice Jackson, dissenting in *Jordan v. De George*, 341 U.S. 223 (1951), called "moral turpitude" an "undefined and undefinable standard."  *Id*. at 235.  More recently, Judge Richard Posner has noted that when Congress "inserted the term [moral turpitude] in the immigration statute . . . [it] had no settled meaning at the time (and has none still)."  *Mei*, 393 F.3d at 739.  The ritual description employed by the BIA, which, if it provides any illumination at all, does so more by its luridness than its cogency, is that "moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between [persons or to] society in general."  *Id.* (quotations omitted and alteration in original) (citing *In Re Danesh,* 19 I. & N. Dec. 669, 670 (BIA 1988)).

One of the most helpful discussions of "moral turpitude" appears in our *Rodriguez-Herrera* decision, which noted that for crimes that "are not of the gravest character, a requirement of fraud has ordinarily been required."  52 F.3d at 240.

6

Where (as in the case now before this court) no element of fraud exists, what is needed are "rather grave acts of baseness or depravity." *Id.* Examples of these set forth in *Rodriguez-Herrera* include "spousal abuse, child abuse, first-degree incest, and having carnal knowledge of a 15 year old female." *Id.*

In *Castrijon-Garcia,* we observed that in order to constitute "moral turpitude," where the offense under consideration does not involve fraud, "it must offend the most fundamental moral values of society, or as some would say, shock the public conscience." 704 F.3d at 1212 (internal citations, quotation marks, and alterations omitted) (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1074-75 (9th Cir. 2007) (en banc)). A sample list of crimes that we have held, at various times, <u>not</u> to involve "moral turpitude" is enlightening and includes: conviction of a felony committed with the intent to promote criminal conduct by gang members, *Hernandez-Gonzalez*, 778 F.3d at 797; simple kidnapping, *Castrijon-Garcia*, 704 F.3d at 1213; misprision of a felony, *Robles-Urrea v. Holder*, 678 F.3d 702, 708-710 (9th Cir. 2012); misdemeanor false imprisonment, *Saavedra-Figueroa v. Holder,* 625 F.3d 621, 626 (9th Cir. 2010); aggravated assault, *Uppal v. Holder*, 605 F.3d 712, 719 (9th Cir. 2010); accessory after the fact, *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1072 (9th Cir. 2007) (concurring opinion) (en banc), *overruled on other grounds, U.S. v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir.

7

2011) (en banc) (per curiam), *abrogated by Descamps v. U.S.*, 133 S. Ct. 2276 (2013); and residential burglary, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005), *abrogated on other grounds*, *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011 (2012).

While some of the conduct criminalized by § 2800.2 might in certain circumstances exceed in seriousness the listed crimes and constitute "moral turpitude," much simply does not come close. The first paragraph of the statute, subsection (a), imposes enhanced penalties on a person who flees or attempts to elude a police officer by driving his or her vehicle "in a willful or wanton disregard for the safety of persons or property." Section 2800.2(b) dramatically changes the landscape, by defining "willful or wanton disregard" as including attempts to elude a peace officer "during which time either three or more [traffic] violations . . . occur." Not surprisingly, the California Supreme Court has noted that the concept of "wanton and willful" embedded in § 2800.2 includes "conduct that ordinarily would not be considered particularly dangerous." *People v. Howard*, 34 Cal. 4th 1129, 1138 (2005).

We have recently noted that crimes of "moral turpitude" that do not involve fraud "generally involve an intent to injure, actual injury, or a protected class of victims." *Hernandez-Gonzalez*, 778 F.3d at 802 (internal quotations omitted).

8

Violation of § 2800.2 might easily involve criminal conduct that results in no injury whatsoever and expresses no intent to injure. The BIA decision therefore simply "mistakes criminality for moral turpitude." *Id.* at 805. Put differently, one can easily say that eluding the police while failing to wear a seat belt, exceeding the speed limit, and running a stop sign is reprehensible and deserves punishment, but can one—in fairness, and with reasonable respect for the English language—also say that this conduct is base, vile, or depraved?

Not one of the four cases cited in the BIA opinion for the proposition that eluding the police constitutes a crime of "moral turpitude" contains a provision like § 2800.2(b). With the exception of the *Dewey* decision, which sets forth an analysis in a different arena of the law entirely, all the cited cases involve conduct, and *only* conduct, significantly more serious than what is criminalized by the statute before us here.

In *People v. Dewey*, 42 Cal. App. 4th 216 (1996), the first case cited in the BIA opinion, the issue was whether a conviction for violation of § 2800.2 might constitute "moral turpitude" for *evidentiary* purposes because the conviction might "relate to the witness's veracity and support an inference that he or she may lie under oath." *Id.* at 221. *Dewey* found that, in this limited sense, a conviction for eluding the police involved the sort of "moral turpitude" that would justify its use

9

for impeachment purposes. No part of that decision addressed the fact that §

2800.2(b) allowed a finding of wanton and willful conduct based on three minor

traffic infractions. Indeed, no categorical analysis of the statute was performed in

*Dewey*, because it was not relevant to the particular, narrow evidentiary issue before

the court.

The second cited decision, the BIA's own previous decision in *Matter of*

*Ruiz-Lopez*, 25 I. & N. Dec. 551 (BIA 2011), *aff'd Ruiz-Lopez v. Holder*, 682 F.3d

513 (6th Cir. 2012)—as noted above—addressed a statute from the state of

Washington that, again, contained no provision analogous to § 2800.2(b). The

Sixth Circuit, in upholding the BIA's construction of this statute focused only on

whether the conduct covered by the statute manifested "wanton or wilful disregard"

for the lives or property of others. 682 F.3d at 520. Unlike the Washington statute

examined in *Ruiz-Lopez,* § 2800.2 does *not* require disregard for life or property to

sustain a conviction, merely the commission of three minor traffic offenses.

*Mei v. Ashcroft* is similarly unhelpful. 393 F.3d 737 (7th Cir. 2004). That

case, again, involved a statute that had no provision analogous to § 2800.2(b) and,

moreover, affirmatively required for conviction that the individual attempt to elude

the police at a speed twenty-one or more miles above the posted limit. Judge

Posner found it crucial that the statute defined a particularly egregious "subset of

10

fleeing." *Id.* at 741. In contrast, § 2800.2 includes under its umbrella conduct at the least egregious end of the "eluding" spectrum.

Like the other three cases, the fourth case cited in the BIA decision, *Idowu v. Attorney General of U.S.*, 512 Fed. App'x 222, 225-26 (3d Cir. 2013), addressed a New Jersey law covering eluding the police in the second (*i.e.*, aggravated) degree, that required much more serious behavior for conviction. This statute, N.J. Stat. Ann. § 2C:29-2(b), permitted conviction *only* where "the flight or attempt to elude creates a risk of death or injury to any person." *Id.* at 225 (quotations omitted). Nothing approaching conduct of this level of seriousness is needed for conviction under § 2800.2.

In conclusion, and at the risk of repetition, eluding the police, in general, is certainly a serious crime, but no decision prior to the one we are making here has found that violation of a statute like § 2800.2, whose outer boundaries encompass conduct at such a reduced level of seriousness, to be "base, vile, or depraved" enough to constitute "moral turpitude." With its distorted interpretation of this statute, the BIA is attempting to cram so much into the overstuffed "moral turpitude" suitcase that its seams have burst. We should not allow this.

For the reasons set forth above, I respectfully dissent.