# Matter of Edgar LEAL, Respondent

*Decided September 21, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of "recklessly endangering another person with a substantial risk of imminent death" in violation of section 13-1201(A) of the Arizona Revised Statutes is categorically a crime involving moral turpitude under the definition in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008), even though Arizona law defines recklessness to encompass a subjective ignorance of risk resulting from voluntary intoxication.

FOR RESPONDENT: Nicomedes E. Suriel, Esquire, Phoenix, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Brent Landis, Senior Attorney

BEFORE: Board Panel: COLE, PAULEY, and GREER, Board Members.

PAULEY, Board Member:

In a decision dated June 22, 2010, an Immigration Judge denied the respondent's application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (2006), and ordered him removed from the United States. The respondent has appealed from that decision. The issue in this case is whether "recklessly endangering another person with a substantial risk of imminent death" in violation of section 13-1201(A) of the Arizona Revised Statutes is a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006), even though recklessness is defined to include unawareness of a risk created by the actor resulting from voluntary intoxication. We conclude that it is and will dismiss the respondent's appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States on January 1, 1990, without being admitted or paroled. In 2007 he was convicted of endangerment in violation of section 13-1201(A) of the Arizona Revised Statutes.

The Department of Homeland Security ("DHS") initiated removal proceedings by filing a notice to appear in Immigration Court charging the

respondent with removability as an alien who is present in the United States without having been admitted or paroled under section 212(a)(6)(A)(i) of the Act. The respondent conceded removability as charged and requested an opportunity to apply for cancellation of removal. The Immigration Judge denied the respondent's application on grounds of statutory ineligibility, finding that his conviction for endangerment under Arizona law precluded him from proving that he "has not been convicted of an offense under section 212(a)(2)," as required by section 240A(b)(1)(C) of the Act. To be precise, the Immigration Judge found that the respondent's endangerment offense was a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act.

On appeal, the respondent does not dispute the existence of his conviction for endangerment under section 13-1201(A) of the Arizona Revised Statutes. Instead, he argues that the offense is not a crime involving moral turpitude under applicable precedents of this Board and the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction these proceedings arise. The respondent maintains that endangerment under Arizona law is not a crime involving moral turpitude because it carries a mens rea of mere recklessness (as opposed to specific intent, knowledge, or willfulness) and does not require that a victim actually be killed or seriously injured.

## II. ANALYSIS

To determine whether the respondent's endangerment conviction was for a crime involving moral turpitude, we employ the analytical framework set forth in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008). Under the first step of that framework, we conduct a "categorical" inquiry in which the law defining the respondent's offense of conviction is examined to ascertain whether moral turpitude is intrinsic to all offenses that have a "realistic probability" of being prosecuted thereunder. *Id.* at 689-90, 696-98. According to the Attorney General, moral turpitude is intrinsic to an offense that necessarily involves "reprehensible conduct" committed with some form of "scienter," such as specific intent, knowledge, willfulness, or recklessness. *Id.* at 689 n.1, 706 n.5.[1]

---

[1] The respondent contends that *Matter of Silva-Trevino* was wrongly decided and that it would have an impermissibly retroactive effect if applied to his conviction, which resulted from a plea agreement entered into before the Attorney General rendered his decision. We recognize that courts of appeals are divided as to whether to accept all aspects of the methodology in that decision. *See Bobadilla v. Holder*, 679 F.3d 1052 (8th Cir. 2012) (collecting cases and deferring to *Silva-Trevino*). However, we are bound to apply *Matter of Silva-Trevino* since the Ninth Circuit has not rejected it. *See* 8 C.F.R. § 1003.1(d)(1)(i) (2012) ("The Board shall be governed . . . by decisions of the Attorney General. . . ."); (continued...)

The respondent was convicted of "endangerment" in violation of section 13-1201(A) of the Arizona Revised Statutes, which at all relevant times has provided as follows:

> A. A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury.
> B. Endangerment involving a substantial risk of imminent death is a class 6 felony. In all other cases, it is a class 1 misdemeanor.

The respondent does not dispute that his offense of conviction was denominated a class 6 felony.[2] Thus, it follows that he was convicted of "[e]ndangerment involving a substantial risk of imminent death," rather than endangerment involving a substantial risk of lesser "physical injury."

### A. Scienter

As the foregoing statutory language makes clear, an actor may be convicted of endangerment in Arizona only if the prosecution establishes that he acted "recklessly." In 2006, when the respondent committed his offense, Arizona defined the term "recklessly" as follows:

> "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.

Ariz. Rev. Stat. Ann. § 13-105(9) (2006). The first two sentences of this definition adhere to the familiar common law rule that recklessness means a conscious disregard of a substantial and unjustifiable risk, constituting a gross

---

(...continued)
*see also Matter of Guevara Alfaro*, 25 I&N Dec. 417, 423 (BIA 2011). In any event, we do not apply here the most controversial facet of *Silva-Trevino*, namely, permitting recourse in some circumstances to evidence that is not in the record of conviction, and we would reach the same conclusion irrespective of that decision.

[2] In 2006, when the respondent committed his offense, the maximum sentence for a class 6 felony in Arizona was imprisonment for 1.5 years. Ariz. Rev. Stat. § 13-702(A) (2006). Because the "maximum penalty possible" exceeded imprisonment for 1 year, the "petty offense" exception is inapplicable. Section 212(a)(2)(A)(ii)(II) of the Act; *see also Matter of Ruiz-Lopez*, 25 I&N Dec. 551, 557 (BIA 2011), *aff'd*, 682 F.3d 513 (6th Cir. 2012).

deviation from the standard of conduct a reasonable person would observe under the circumstances. In the third sentence, however, Arizona has extended the concept of recklessness to also encompass a subjective *ignorance* of risk resulting from voluntary intoxication.[3]

According to the respondent, the voluntary intoxication component of Arizona's recklessness standard does not satisfy the corrupt "scienter" requirement in *Matter of Silva-Trevino* because it does not require a conscious disregard of a known risk. Accordingly, the respondent maintains that moral turpitude does not inhere in all offenses that have a realistic probability of being prosecuted under Arizona's endangerment statute. We do not agree.

In a series of cases, we have held that recklessness is a culpable mental state for moral turpitude purposes where it entails a conscious disregard of a substantial and unjustifiable risk posed by one's conduct. *See Matter of Ruiz-Lopez*, 25 I&N Dec. 551, 553-54 (BIA 2011), *aff'd*, 682 F.3d 513 (6th Cir. 2012); *Matter of Franklin*, 20 I&N Dec. 867, 869-71 (BIA 1994), *aff'd*, 72 F.3d 571 (8th Cir. 1995); *Matter of Wojtkow*, 18 I&N Dec. 111, 112-13 (BIA 1981); *Matter of Medina*, 15 I&N Dec. 611, 613 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977). For the following reasons, we conclude that an actor who fails to perceive a manifest risk of harm solely because of voluntary intoxication is no less culpable than an actor who consciously disregards a known risk. Therefore, recklessness arising from voluntary intoxication qualifies as a form of "scienter" within the meaning of *Silva-Trevino*.

Arizona is not unique in treating unawareness of risk resulting from voluntary intoxication as a form of recklessness. *E.g.*, Ala. Code § 13A-3-2(b) (2012); Alaska Stat. § 11.81.900(a)(3) (2012); Conn. Gen. Stat. § 53a-7 (2012); Me. Rev. Stat. Ann. tit. 17-A, § 37(2) (West 2012); N.H. Rev. Stat. Ann. § 626:2(II)(c) (2012); N.J. Stat. Ann. § 2C:2-8(b) (West 2012); N.Y. Penal Law § 15.05(3) (McKinney 2012); N.D. Cent. Code § 12.1-04-02(2) (2012); Or. Rev. Stat. Ann. § 161.125(2) (West 2012); Tenn. Code Ann. § 39-11-503(b) (West 2010); Wis. Stat. Ann. § 939.24(3) (West 2011). Further, many jurisdictions that have not specifically defined recklessness to encompass voluntary intoxication have accomplished the same practical result by prohibiting defendants from invoking voluntary intoxication as a defense to a recklessness charge. *E.g.*, Del. Code Ann. tit. 11, § 421 (West 2012); Fla. Stat. Ann. § 775.051 (West 2012); Ga. Code Ann. § 16-3-4(c) (West 2012); Iowa Code Ann. § 701.5 (West 2012); Mo. Ann. Stat. § 562.076 (West

---

[3] In a request for supplemental briefing, we asked the parties to address whether "an Arizona offense with a mens rea of 'recklessness' satisf[ies] *Silva-Trevino*'s corrupt 'scienter' requirement, given that Arizona defines recklessness to encompass a subjective ignorance of risk resulting from voluntary intoxication."

2012); Ohio Rev. Code Ann. § 2901.21(C) (West 2011); 18 Pa. Const. Stat. Ann. § 308 (West 2012); Tex. Penal Code Ann. § 8.04(a) (West 2011); Utah Code Ann. § 76-2-306 (West 2012). Indeed, as one leading treatise has observed, "the majority of cases in America support the creation of a special rule relating to intoxication, so that, if the only reason why the defendant does not realize the riskiness of his conduct is that he is too intoxicated to realize it, he is guilty of the recklessness which the crime requires." 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.5(c) (2d ed. Westlaw 2011). This majority view is also embodied in the Model Penal Code, which states that "[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial." Model Penal Code § 2.08(2) (Westlaw through 2011).

Treating voluntary intoxication as morally equivalent to recklessness embodies the sound principle that effectively *choosing* to become unaware of an obvious and unreasonable risk by deliberately impairing one's own mind is a culpable act, akin to a conscious disregard of consequences. By defining recklessness to encompass acts resulting from voluntary intoxication, Arizona thus "comports with and implements society's moral perception that one who has voluntarily impaired his own faculties should be responsible for the consequences." *Montana v. Egelhoff*, 518 U.S. 37, 50 (1996); *see also* Model Penal Code § 2.08, cmt. at 9 (Tent. Draft No. 9, 1959) (stating that "awareness of the potential consequences of excessive drinking on the capacity of human beings to gauge the risks incident to their conduct is by now so dispersed in our culture that it is not unfair to postulate a general equivalence between the risks created by the conduct of the drunken actor and the risks created by his conduct in becoming drunk"). It is thus evident that recklessness arising from voluntary intoxication denotes a substantially higher degree of culpability than mere criminal negligence. *Cf. Matter of M-W-*, 25 I&N Dec. 748, 756 (BIA 2012) (finding that voluntary intoxication does not negate the mens rea required to establish the aggravated felony of "murder"). Under the circumstances, we are satisfied that recklessness arising from voluntary intoxication is a culpable mental state that satisfies the corrupt scienter requirement of *Silva-Trevino*.

### B. "Reprehensible Conduct"

Having determined that recklessness under Arizona law satisfies the "scienter" requirement of *Silva-Trevino*, we must now decide whether "recklessly endangering another person with a substantial risk of imminent

death" satisfies the "reprehensible conduct" requirement in the Attorney General's decision. We conclude that it does.

In general, a crime involves moral turpitude if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Ruiz-Lopez*, 25 I&N Dec. at 553. Upon de novo review, we are convinced that recklessly exposing another person to a "substantial risk of imminent death" is morally turpitudinous because it is a base act that transgresses the socially accepted rules of morality and breaches the individual's ethical duty to society.

One of the most fundamental (and least onerous) duties a man owes to his community and his fellow man is that he will take reasonable care to avoid causing the death of others. One who breaches that duty by consciously disregarding a known risk of harm or by deliberately impairing his own capacity for conscious judgment has, in our view, exhibited a base contempt for the well-being of the community, which is the essence of moral turpitude. This view finds ample support in the precedents of the Federal courts of appeals. *See Idy v. Holder*, 674 F.3d 111, 118-19 (1st Cir. 2012) (holding that recklessly engaging in conduct that places or may place another in danger of serious bodily injury under New Hampshire law is a crime involving moral turpitude); *Hernandez-Perez v. Holder*, 569 F.3d 345, 348 (8th Cir. 2009) (holding that reckless child endangerment under Iowa law is a crime involving moral turpitude); *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1286-87 (11th Cir. 2009) (per curiam) (holding that recklessly endangering the bodily safety of another under Georgia law is a crime involving moral turpitude); *Knapik v. Ashcroft*, 384 F.3d 84, 90 (3d Cir. 2004) (holding that reckless endangerment under New York law is a crime involving moral turpitude).

In arguing that the "risk of imminent death" clause of section 13-1201(A) does not define a categorical crime involving moral turpitude, the respondent correctly observes that the statute does not require that the victim actually be killed or injured as a result of the offender's conduct. However, the actual infliction of such harm is not determinative of the moral turpitude question. It is *not* our position that an offense with a reckless mental state must be accompanied by the death or serious bodily injury of a victim in order to qualify as a crime involving moral turpitude. *See Matter of Ruiz-Lopez*, 25 I&N Dec. at 554-56 (holding that moral turpitude inhered in the Washington offense of driving a vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, even though the statute required no actual harm to a victim); *see also Matter of Medina*, 15 I&N Dec. at 614 (holding that reckless assault with a deadly weapon under Illinois law was a crime involving moral turpitude, without requiring proof that the deadly weapon was actually

used against a victim).[4]   Certainly, if death or serious bodily injury *had* resulted from the respondent's conduct, we would have little difficulty in finding that it involved moral turpitude; but the respondent's good fortune in not killing or injuring anyone does not mitigate the moral baseness of his offense. *See Knapik v. Ashcroft*, 384 F.3d at 90 n.5 ("With regard to reckless acts, moral turpitude inheres in the conscious disregard of a substantial and unjustifiable risk of severe harm or death. Knapik's good fortune in not injuring or killing anyone does not change the quality of his actions.")

The respondent also argues that section 13-1201(A) encompasses conduct that is not reprehensible, such as discharging firearms in public, obstructing public highways, abandoning life-threatening containers attractive to children, or throwing water balloons at passing cars. *See United States v. Hernandez-Castellanos*, 287 F.3d 876, 880 (9th Cir. 2002); *Matter of Navajo County Juvenile Delinquency Action No. 89-J-099*, 793 P.2d 146 (Ariz. Ct. App. 1990). But that argument overlooks the crucial fact that such conduct cannot be successfully prosecuted as "endangerment" unless: (1) the accused recklessly disregarded a substantial risk that the conduct would cause the imminent death of a victim; and (2) such conduct did, *in fact*, create a substantial risk of imminent death to an actual, identifiable person. *See State v. Doss*, 966 P.2d 1012, 1015 (Ariz. Ct. App. 1998). Section 13-1201(A) does not criminalize the creation of mere hypothetical dangers.

For instance, the conduct described in *Matter of Navajo County Juvenile Delinquency Action No. 89-J-099*, 793 P.2d at 147—throwing water balloons at passing cars—appears relatively innocuous until one considers the fact that the balloons were thrown at vehicles that were moving at high speeds on a public highway. *Id*. What is more, the balloons were thrown by a person who admittedly anticipated that his conduct would cause the passing vehicles to swerve as the drivers took "spontaneous evasive action" to avoid being hit. *Id*. Further, one such vehicle actually did swerve out of its traffic lane, thereby "plac[ing] in grave peril not only the occupants of the vehicle taking evasive

---

[4] In *Matter of Fualaau*, 21 I&N Dec. 475, 478 (BIA 1996), we concluded that a simple reckless assault under Hawaii law was not morally turpitudinous, despite the infliction of some "bodily harm" upon a victim, where the statute contained no aggravating dimension that seriously elevated the culpability of the offense. Although we indicated there that the infliction of serious bodily injury upon a victim was necessary to make a reckless *simple assault* crime a crime involving moral turpitude, *see id.*, we did not indicate that the infliction of such an injury was a general requirement in all cases involving recklessness. *See Matter of Ruiz-Lopez*, 25 I&N Dec. at 554 (acknowledging the serious bodily injury requirement applicable to reckless assault offenses, but declining to extend that requirement beyond the simple assault context). Nothing in *Fualaau* contradicts our present determination that recklessly exposing another person to a substantial risk of imminent death is a morally turpitudinous offense.

action but others who may [have been] in the vicinity." *Id*. We have no reservations about declaring such an offense to be a crime involving moral turpitude.

## III. CONCLUSION

In conclusion, we find that "recklessly endangering another person with a substantial risk of imminent death" in violation of section 13-1201(A) of the Arizona Revised Statutes is a categorical crime involving moral turpitude because it necessarily involves reprehensible conduct committed with a corrupt scienter. There is no realistic probability that an Arizona defendant could be convicted of "recklessly endangering another person with a substantial risk of imminent death" without engaging in conduct that involves moral turpitude. As an alien convicted of a crime involving moral turpitude, the respondent is ineligible for cancellation of removal pursuant to section 240A(b)(1)(C) of the Act. Therefore the Immigration Judge properly denied his application for that relief. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.