# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 15-2223

———————————————————

Jose Estrada-Rodriguez

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

————————

Petition for Review of an Order of the
Board of Immigration Appeals

————————

Submitted: January 12, 2016
Filed: June 6, 2016

————————

Before MURPHY, SMITH, and BENTON, Circuit Judges.

————————

SMITH, Circuit Judge.

Jose Estrada-Rodriguez ("Estrada") petitions for review of a decision of the Board of Immigration Appeals (BIA) ordering him removed from the United States because of his conviction for a crime involving moral turpitude (CIMT). *See* 8 U.S.C. § 1229b(b)(1). An Immigration Judge (IJ) initially determined that Estrada's conviction under Arkansas Code Annotated § 5-13-205, as in effect in 2004, is not a CIMT. After the BIA reopened and remanded Estrada's case to the IJ, the IJ

reconsidered the status of Estrada's conviction and determined that it constitutes a CIMT. The BIA dismissed Estrada's appeal. Estrada petitions us to review the BIA's dismissal arguing that (1) the IJ was precluded from reconsidering whether his conviction is a CIMT, (2) the IJ and BIA erred in determining that his conviction under Arkansas Code Annotated § 5-13-205 is a CIMT, and (3) the IJ and BIA violated his due process rights. We deny the petition.

## I. *Background*

In 2000, Estrada, a native and citizen of Mexico, illegally entered the United States. In 2004, he was convicted of assault in the first degree, a Class A misdemeanor, in violation of Arkansas Code Annotated § 5-13-205.[1] A few years later, Estrada came to the attention of the Department of Homeland Security (DHS) when he was arrested in McDonald County, Missouri, for driving while intoxicated. Thereafter, DHS initiated removal proceedings against Estrada.

Before the IJ, Estrada conceded the charge of removability. Estrada, nonetheless, sought relief from removal and filed an application for cancellation of removal. Estrada asserted that his removal would cause exceptional and extremely unusual hardship to his United States citizen children. *See* 8 U.S.C. § 1229b(b)(1)(D). DHS opposed Estrada's request for relief, arguing that his Arkansas assault conviction is a CIMT and rendered him statutorily ineligible for relief.

---

[1]Under the statute,

> (a) A person commits assault in the first degree if he or she recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person.

> (b) Assault in the first degree is a Class A misdemeanor.

Ark. Code Ann. § 5-13-205 (2004).

The IJ denied Estrada's application for cancellation of removal. Initially, the IJ determined that Estrada's Arkansas assault conviction is not a CIMT; therefore, the conviction did not prevent Estrada from establishing good moral character. Specifically, the IJ concluded that because Arkansas Code Annotated § 5-13-205 did not require the actual infliction of harm or the use of a deadly weapon, there was a realistic probability that the statute would be applied to non-turpitudinous conduct. Nevertheless, the IJ held that Estrada did not meet his burden of establishing ten years of continuous physical presence. Additionally, the IJ determined that Estrada failed to demonstrate that his removal would cause exceptional and extremely unusual hardship to a qualifying relative.

Estrada appealed to the BIA, which affirmed the IJ's decision. The BIA agreed with the IJ that Estrada failed to demonstrate that his removal would cause the requisite hardship to a qualifying relative. The absence of extreme hardship made it unnecessary for the BIA to address the continuous-presence requirement. Estrada did not petition for review of the BIA's decision.

Subsequently, Estrada filed a timely motion to reopen the proceedings. Estrada alleged that new evidence enhanced the merits of his extreme-hardship contention by showing that one of his children suffered from developmental delays and autism. The BIA granted Estrada's motion and remanded the record to the IJ "for further consideration of the hardship factors . . . , and for other action as deemed appropriate." On remand, DHS again opposed Estrada's application for cancellation of removal, renewing its argument that Estrada's Arkansas assault conviction is a CIMT, making the hardship determination immaterial. DHS noted that in *In re Leal*, the BIA had recently construed Arizona Revised Statutes § 13-1201(A),[2] reckless endangerment, and concluded that a conviction under that statute "is a categorical [CIMT] because

_____

[2]"A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." Ariz. Rev. Stat. Ann. § 13-1201(A).

it necessarily involves reprehensible conduct committed with a corrupt scienter." 26 I. & N. Dec. 20, 27 (BIA 2012), *aff'd sub. nom.*, *Leal v. Holder*, 771 F.3d 1140 (9th Cir. 2014). DHS noted strong similarities between the Arizona statute and the Arkansas statute under which Estrada was convicted.

The IJ granted DHS's motion to pretermit Estrada's cancellation application, holding that Estrada's conviction for assault is a CIMT because it went "beyond simple assault" and "required a risk of imminent death or *serious* physical injury." Estrada appealed to the BIA, arguing both that the IJ did not have authority to reconsider the CIMT issue and that his conviction "does not involve any moral[ly] turpitudinous conduct." In a single-member, unpublished decision, the BIA dismissed the appeal, finding that the IJ properly reconsidered the issue and agreeing with the IJ that a conviction under Arkansas Code Annotated § 5-13-205 categorically is a CIMT.

## II. *Discussion*

In immigration cases, we review the final agency action, which ordinarily is the BIA's decision. *Etenyi v. Lynch*, 799 F.3d 1003, 1006 (8th Cir. 2015). But where the BIA adopts the findings or reasoning of the IJ, "we also review the IJ's decision as part of the final agency action." *Id.* (quotation and citation omitted). On appeal, Estrada argues that (1) the IJ was precluded from reconsidering whether his conviction is a CIMT, (2) the IJ and BIA erred in determining that his conviction under Arkansas Code Annotated § 5-13-205 is a CIMT, and (3) the IJ and BIA violated his due process rights.

### A. *Collateral Estoppel and Law of the Case*

At the outset, Estrada argues that general principles of collateral estoppel and the "law of the case" doctrine prevented the IJ from reconsidering whether his Arkansas assault conviction is a CIMT because the IJ previously considered and decided the matter. Collateral estoppel is a question of law, which we review de novo.

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). "Law of the case is a doctrine of discretion," *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1440 (8th Cir. 1986), and thus, we review for an abuse of discretion a lower tribunal's decision not to defer to previous rulings in the same case.

Collateral estoppel, also referred to as issue preclusion, prevents an issue from being relitigated in another lawsuit "when an issue of ultimate fact has been determined by a valid and final judgment." *United States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir. 1996) (citations omitted). Our circuit examines five factors to determine whether collateral estoppel applies to a particular case:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;
>
> (2) the issue sought to be precluded must be the same as the issue involved in the prior action;
>
> (3) the issue sought to be precluded must have been actually litigated in the prior action;
>
> (4) the issue sought to be precluded must have been determined by a valid and final judgment; and
>
> (5) the determination in the prior action must have been essential to the prior judgment.

*Anderson v. Genuine Parts Co.*, 128 F.3d 1267, 1273 (8th Cir. 1997) (quotation and citation omitted).

After considering these factors, we hold that the IJ was not collaterally estopped from reconsidering the CIMT issue. Collateral estoppel does not apply here because the CIMT issue was not previously determined by a valid and final judgment in a

*prior* action between Estrada and DHS. Instead, the CIMT issue was determined at an earlier stage of the *same* action and was reconsidered pursuant to the reopening of the action. *See Arizona v. California*, 460 U.S. 605, 619 (1983) (finding it "clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment" (citation omitted)).

Whereas collateral estoppel is a question of power, law of the case is a question of discretion. *See S. Ry. Co. v. Clift*, 260 U.S. 316, 319 (1922); *see also Arizona*, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power." (citations omitted)). Law of the case is one of the many doctrines our legal system has inherited from the common law. At common law, courts were directed "to follow decisions made in an earlier proceeding." *Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 457 (8th Cir. 1990) (citations omitted). The Supreme Court has similarly understood the doctrine. *See Arizona*, 460 U.S. at 618 ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (footnote and citation omitted)).[3]

---

[3]The government argues that the law of the case doctrine did not "constrain" the IJ from reconsidering the question of moral turpitude. Our circuit has used the label "law of the case" in a similar sense, holding that earlier decisions only become *binding* on final judgment. *See, e.g.*, *Day v. Amax, Inc.*, 701 F.2d 1258, 1263 (8th Cir. 1983); *United States v. Hively*, 437 F.3d 752, 766 (8th Cir. 2006); *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995). "Law of the case" has another sense. *See* 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.1 (2d ed. 2002) ("Only if law-of-the-case rules are seen as constraints on authority is it helpful to say that the rules do not apply to reconsideration by a trial court. The policies that support adherence to earlier rulings without perpetual reexamination surely do apply [to trial-court rulings], whatever label is used."). "Law of the case" doctrine, as described in *Arizona*, embodies principles that work alongside Rule 54(b) of the Federal Rules of Civil Procedure in guiding a court's discretion when reconsidering issues decided in the same case.

On remand from the BIA, the IJ reconsidered and reversed its prior decision that Estrada's Arkansas assault conviction is not a CIMT. As the BIA noted, nothing in its order reopening and remanding the action precluded the IJ from reconsidering the CIMT issue on remand. *See In re Patel*, 16 I. & N. Dec. 600, 601 (BIA 1978) (holding that a remand, unless qualified or limited for a specific purpose, is effective for the stated purpose and for consideration of any and all matters that the IJ deems appropriate). The BIA remanded the action to the IJ "for further consideration of the hardship factors . . . , and for other action as deemed appropriate." On remand, the IJ became aware of factually similar cases that called into question the correctness of its prior determination. The typical considerations that counsel against reconsideration—uniformity of decisions, expectations of the parties, and judicial economy—do not demonstrate that reconsideration was inappropriate here. *See Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008). It was not an abuse of discretion for the IJ to deem the CIMT issue appropriate for reconsideration.

B. *Arkansas Code Annotated § 5-13-205*

Estrada next argues that the BIA and IJ incorrectly determined that his Arkansas assault conviction is a CIMT. Estrada relies on the general rule that simple assault is not considered a CIMT. In order for an assault to be a CIMT, Estrada argues, it must be accompanied by a vicious motive or "an aggravating factor such as the use of a dangerous or deadly weapon, or a relationship to the victim that society considered to be important." According to Estrada, his assault conviction was not accompanied by either a vicious motive or an aggravating factor. We review de novo whether Estrada's conviction constitutes a CIMT. *See* 8 U.S.C. § 1252(a)(2)(C), (D).

Under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101–1524, "[t]he Attorney General may cancel removal of . . . an alien who is inadmissible or

deportable from the United States if the alien . . . has not been convicted of an offense under section 1182(a)(2) . . . of this title . . . ." 8 U.S.C. § 1229b(b)(1)(C). One of the offenses under 8 U.S.C. § 1182(a)(2) is "a crime involving moral turpitude." *Id*. § 1182(a)(2)(A)(i)(I). The INA does not define the phrase "crime involving moral turpitude." Instead, Congress left the meaning of that phrase "to future administrative and judicial interpretation." *Franklin v. INS*, 72 F.3d 571, 572 (8th Cir. 1995) (quotation and citation omitted). Generally, when we confront questions implicating "an agency's construction of the statute which it administers," and "the statute is silent or ambiguous with respect to the specific issue," we ask "whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (footnotes omitted). In doing so, we accord "considerable weight" to an agency's construction, and only set it aside if it is "arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844 (footnote omitted). But where an agency's construction does not carry the force of law, *Chevron* deference may be inappropriate. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).[4]

Here, the BIA's decision was issued by a single-member panel and is therefore unpublished. As a result, Estrada urges us to apply *Skidmore* deference, a less deferential review standard than that employed in *Chevron*. DHS, on the other hand, suggests that we can apply *Chevron* deference because we have "previously applied a high level of deference to unpublished opinions." This is an issue we need not decide

---

[4]We say "may be inappropriate" rather than "is inappropriate" because the Court in *Mead* discussed factors that were sufficient to trigger *Chevron* deference; it did not hold that the absence of these factors necessarily precluded the application of *Chevron* deference. *Id.* (holding "that administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority"). Ultimately, *Chevron* deference applies if Congress has explicitly or implicitly left a gap in a statute for an agency to fill. *See Chevron*, 467 U.S. at 843.

because even applying the lesser *Skidmore* deference, we affirm the agency's decision. *See Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 851 (8th Cir. 2008) (leaving "for another day" resolution of the same issue). Under *Skidmore*, we defer to an agency's ruling to the extent that it is persuasive. *Mead Corp.*, 533 U.S. at 221.

Over the years, the BIA has developed a general definition of a CIMT:

> We have observed that the definition of a crime involving moral turpitude is nebulous. Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

*In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999) (per curiam) (internal citations omitted). To determine whether a conviction constitutes a CIMT, the BIA has explained that courts

> must first examine the statute itself to determine whether the inherent nature of the crime involves moral turpitude. If the statute defines a crime in which moral turpitude necessarily inheres, then the conviction is for a crime involving moral turpitude for immigration purposes, and our analysis ends. However, if the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a "divisible" statute, and we look to the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted.

*Id.* (internal citations omitted).

Estrada was convicted of first-degree assault under Arkansas Code Annotated § 5-13-205(a), which, in 2004, criminalized "[r]ecklessly engag[ing] in conduct that creates a substantial risk of death or serious physical injury to another person." Arkansas law further provides that "[a] person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur." Ark. Code Ann. § 5-2-202(3)(A). The subject "risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." *Id.* § 5-2-202(3)(B).

Even applying *Skidmore* deference, we affirm the BIA's decision. We agree with the BIA that Estrada's conviction categorically is a CIMT. "Offenses characterized as 'simple assaults' are generally not considered to be crimes involving moral turpitude." *In Re Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007) (citations omitted). But the BIA has determined that statutes like the Arkansas assault statute at issue here categorically constitute a CIMT.

For instance, in 2012, the BIA held that "'recklessly endangering another person with a substantial risk of imminent death' in violation of section 13-1201(A) of the Arizona Revised Statutes" categorically constitutes a CIMT. *See Leal*, 26 I. & N. Dec. at 27. In *Leal*, the BIA concluded that "recklessly exposing another person to a 'substantial risk of imminent death' is morally turpitudinous because it is a base act that transgresses the socially accepted rules of morality and breaches the individual's ethical duty to society." *Id.* at 25.

In 2015, the BIA held that a conviction for "'recklessly engag[ing] in conduct that places another in imminent danger of serious bodily injury' in violation of section 22.05(a) of the Texas Penal Code" also categorically constitutes a CIMT. *See In re Hernandez*, 26 I. & N. Dec. 464, 466 (BIA 2015) (alteration in original). The offense

in *Hernandez* was not limited to the creation of a risk of "imminent death," as was the case in *Leal*. *Id*. at 467. Nevertheless, the BIA explained that "all of the potential harm risked by the reckless conduct penalized by the Texas statute is sufficiently grave to make it reprehensible." *Id*. The BIA observed that "[a] person who acts recklessly to place another in 'imminent danger of serious bodily injury' exhibits the same base contempt for the well-being of others as an individual who places another in 'substantial risk of imminent death.'" *Id*. (quoting *Leal*, 26 I. & N. Dec. at 25–26).

Estrada and the BIA characterize these cases as a change in the law. We disagree. These decisions did not extend existing law to cover facts not previously under its reach. A vicious or corrupt mind has always been "[a]mong the tests to determine if a crime involves moral turpitude." *See Ajami*, 22 I. & N. Dec. at 950 (citations omitted). The touchstone of the CIMT inquiry is whether the act is "contrary to the accepted and customary rule of right and duty between man and man." *Marciano v. INS*, 450 F.2d 1022, 1025 (8th Cir. 1971) (quotation and citation omitted); *see also Ajami*, 22 I. & N. Dec. at 950 (defining a CIMT as an act that is "contrary to the accepted rules of morality and the duties owed between persons or to society in general" (citations omitted)). Courts have previously held that moral turpitude can inhere in the commission of a crime with recklessness, even if one does not act with intent. *See, e.g.*, *Partyka v. U.S. Attorney Gen.*, 417 F.3d 408, 414 (3d Cir. 2005) (explaining that "the BIA has found moral turpitude to inhere in serious crimes committed recklessly, *i.e.*, with a conscious disregard of a substantial and unjustifiable risk that serious injury or death would follow") (citing *In re Medina*, 15 I. & N. Dec. 611, 614 (BIA 1976) (concluding that moral turpitude inheres in aggravated assault with a deadly weapon even if one acts with recklessness because the "definition of recklessness requires an actual awareness of the risk created by the criminal violator's action")); *Knapik v. Ashcroft*, 384 F.3d 84, 87 (3d Cir. 2004) (affirming the BIA's conclusion "that the elements of depravity, recklessness and grave risk of death to another person" under New York's first-degree reckless endangerment offense were "sufficient to establish moral turpitude").

Estrada also attempts to distinguish the Arkansas assault statute from the statutes at issue in *Hernandez* and *Leal*. First, Estrada argues that the BIA wrongly equated "recklessness" as defined under Arkansas law with "recklessness" as defined under Texas law. Estrada contends that the BIA erroneously relied on *Hernandez* because the Texas statute, unlike the Arkansas statute, expressly requires a person to be "aware" of a risk. Estrada, however, assumes that because the Arkansas statute does not expressly require awareness of a disregarded risk, awareness of the risk is not required under the Arkansas assault statute. The statute applies to a person who "consciously disregards a substantial and unjustifiable risk." Ark. Code Ann. § 5-2-202(3)(A). It is hard to imagine how a person can consciously disregard a risk of which he is unaware. This argument from silence is unpersuasive. Moreover, in *Hernandez*, the BIA did not focus on the Texas statute's use of the term "aware" but instead noted that it has "previously . . . held that recklessness is a culpable mental state if it entails a *conscious* disregard of a substantial and unjustifiable risk posed by one's conduct." *Hernandez*, 26 I. & N. Dec. at 465–66 (emphasis added) (citations omitted). Finally, even though the statute at issue in *Leal* defined recklessness "to include *unawareness* of a risk created by the actor resulting from voluntary intoxication," the BIA held that a conviction under the statute is a CIMT. *Leal*, 26 I. & N. Dec. at 20 (emphasis added).

Estrada next argues that the Arizona and Texas statutes are not sufficiently analogous because, unlike the Arkansas statute, both require a victim to be placed in "imminent" danger. Estrada does note a difference between the statutes, but he fails to explain why the imminency of the harm is relevant to the CIMT analysis. Whether the harm is imminent does not indicate whether the act is base, vile, or depraved. This difference does not meaningfully distinguish the statutes on the question of a CIMT, nor does it undermine the analysis of the BIA.

Estrada "recklessly engage[d] in conduct that create[d] a substantial risk of death or serious physical injury to another person." *See* Ark. Code Ann. § 5-13-205(a)

-12-

(2004). The statute only applies to persons who recklessly disregard a serious risk of danger. Such an act is "contrary to the accepted and customary rule of right and duty between man and man." *See Marciano*, 450 F.2d at 1025 (quotation and citation omitted). We hold that a conviction under Arkansas Code Annotated § 5-13-205, in its 2004 form, categorically constitutes a CIMT.

## C. *Due Process*

Estrada's final argument is that "[t]he change in law by the Board resulted in a deprivation of [his] due process rights." (Emphasis omitted.) As explained above, there was no "change in law." Therefore, we find it unnecessary to address this argument.

## III. *Conclusion*

Accordingly, we deny Estrada's petition for review.

_____