# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2309

_____

Omar Osman Mohamed

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: March 16, 2022
Filed: August 10, 2022
_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

In 1996, Omar Osman Mohamed, a native and citizen of Somalia, entered the United States as a refugee in New York City, New York, when he was 16 years old. His status was subsequently adjusted to lawful permanent resident on June 26, 1999. Mohamed's parents became naturalized citizens in 2003 and 2006 but Mohamed's application was denied due to a returned check for the processing fees. Before being ordered removed from the United States, Mohamed resided in St. Paul, Minnesota, with his brother. Mohamed petitions for review of the order of the Board of

Immigration Appeals ("BIA") dismissing his appeal. Having jurisdiction pursuant to 8 U.S.C. § 1252(b)(2), we deny the petition.

## I. BACKGROUND

This case has a lengthy procedural history that has now spanned more than a decade. Mohamed initially came to the attention of immigration authorities following a conviction in New York federal court for possessing cathinone ("khat"), in violation of 21 U.S.C. § 844(a). In September 2011, the Department of Homeland Security ("DHS") commenced removal proceedings against Mohamed due to the controlled substance violation. See 8 U.S.C. § 227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy to attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance offense (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 games or less of marijuana, is deportable."). The Immigration Judge ("IJ") entered an *in absentia* removal order on January 10, 2012. Four and a half years later, Mohamed moved to reopen the removal proceedings, asserting he did not receive notice of the hearing. The IJ reopened the proceedings on July 25, 2016, noting the notice of hearing sent to Mohamed had been returned by the post office as undelivered.

While the reopened removal proceedings were pending, in June 2017, Mohamed was convicted in Minnesota state court on two counts of insurance fraud—employment of runners. DHS submitted these convictions as an additional charge of removability. Mohamed's application for asylum and for withholding of removal, which was received by the immigration court in Fort Snelling, Minnesota, on September 18, 2017, checked boxes indicating Mohamed was seeking relief based on religion, nationality, political opinion, membership in a particular social group, and torture convention. R. at 1416. He explained that he was a member of a clan that had been victimized by violence committed by other clans in late March/early April 1991, and he feared the same clans who had previously attacked his family would harm or kill him if he returned to Somalia. Id. He also stated that

al-Shabaab terrorists had made it clear they would kill him if he returned to Somalia because, as "a musician who 'dances with naked women,'" he did not share their Islamic ideologies. Id. at 1416, 1423. Mohamed later amended his application to correct certain information about himself and his criminal history, but he did not change the substance of his claims for relief. R. at 1356, 1359, 1363, & 1367. Mohamed also applied for cancellation of removal. R. at 1328.

Mohamed conceded removability on the drug conviction but contested removability based on the insurance fraud convictions. The IJ determined that DHS failed to sustain an aggravated felony charge of removability because the loss to the victim did not exceed $10,000. As to the controlled substance conviction, the IJ found in its oral decision that Mohamed met all three statutory eligibility requirements for lawful permanent resident cancellation of removal and exercised favorable discretion by finding Mohamed's positive factors outweighed the negative factors. R. at 982 (Dec. 18, 2017, transcript of IJ decision).

In granting cancellation of removal, the IJ found Mohamed would suffer great hardship and harm if removed to Somalia because of his membership in a minority clan and/or because he had received threats to his life due to a music video that he posted on the Internet depicting a partially clothed female. Id. at 993-94. Mohamed had testified that if removed to Somalia, he believed he would be immediately murdered because of the music video. R. at 1161 (Nov. 30, 2017, hearing transcript). According to Mohamed, he received the first threat the day the video was posted. Id. at 1162. Mohamed believed the people threatening him included: "al-Shabaab, all of them, mothers, fathers. My family members. Somali mothers, fathers, al-Shabaab." Id. Mohamed clarified that his family was not threatening him but the families that know his family were threatening him and telling him, "Why the girl, she's naked? It's not good for you. We are Muslim." Id. Mohamed's counsel attempted to introduce a printout of a black box from YouTube's website that contained the following statement in white letters: "This video is restricted. Try signing in with a Google Apps account." The IJ granted DHS's motion to strike because there was no transcript provided of what was said in the video. Id. at 1090,

-3-

1530-31. Over DHS's objection, the IJ gave Mohamed an additional opportunity to have the videos transcribed and present that evidence at the next hearing along with the remaining witness testimony. R. at 1206. The IJ advised Mohamed's counsel that he should follow the court's practice manual regarding the submission of videos, which she understood to require evidence be presented in a written format. Id. at 1205-06.

At the next hearing, Mohamed's counsel informed the IJ that he was unable to have the videos transcribed and requested permission for a witness, who was the former head of the Somali Justice Center and a Somali leader, testify about what he saw on the videos. R. at 1217 (Dec. 18, 2017, hearing transcript). Mohamed's request was denied, although the IJ did allow the remaining witnesses who had seen the videos to testify. Id. at 1221. Although Mohamed testified that he had copied the video threats onto a DVD (R. at 1163), no video or transcription of the video threats was ever submitted to the court. Outside of the testimony from Mohamed and his witnesses, there was no objective evidence corroborating the nature or source of the threats. DHS argued in closing that the IJ should deny Mohamed's applications for relief because there was no evidence in the record to substantiate Mohamed's claims of threats made in response to the video he posted on social media. R. at 1259.

The IJ concluded that Mohamed should keep his lawful permanent resident status and be given a second chance, and, in the alternative, granted Mohamed's asylum application based on potential membership of Somalis in the United States who have produced music videos involving partially clothed women. The IJ explained:

> The Court finds that [Mohamed] has a well-founded fear of future persecution by the government or by someone that the government is unwilling or unable to control, namely, al-Shabaab, should he return to Somalia. [Mohamed] has already been receiving threats by YouTube or by Internet. [Mohamed's] family has testified about the threats and substantiated the music video. [Mohamed], though his counsel, has

-4-

requested that the Court watch the video and the Court has declined to do so. However, the Court will believe that there was or is a video and also that there are other videos by people threatening [Mohamed] as a result of his music video. Accordingly, that type of music video would not be acceptable in Somalia and the Muslim culture there and the Court believes that [Mohamed] has a well-founded fear that he would be persecuted either by the government or by al-Shabaab, who is an entity who the government is unwilling or unable to control.

R. at 998 (Dec. 18, 2017, transcript of IJ decision).

As another alternative, the IJ found that if asylum were to be denied, she would have granted withholding of removal because Mohamed established it was more likely than not that he would be persecuted based on his race, religion, nationality, membership in a particular social group, or political opinion should he return to Somalia. The IJ explained:

[T]he basis would be on [Mohamed's] clan membership in a minority clan, which would be membership in a particular social group. Furthermore, the other group would be the fact that he had created this music video, which would be unacceptable in the Muslim culture of Somalia. There potentially also could be a religious aspect too of the creation of such a video being unacceptable in the Muslim faith. And that would be another basis for both asylum and withholding of removal. The Court believes that it is more likely than not that al-Shabaab would harm [Mohamed] based on one or any or all of those reasons and that the government of Somalia is unable or unwilling to control al-Shabaab. Furthermore, the government could also easily be aware of this video and also be the alleged persecutor.

Id. at 998-99.

DHS appealed to the BIA, identifying four purported errors: (1) Mohamed failed to demonstrate that he warranted a favorable exercise of discretion in light of his criminal history and other negative factors; (2) the IJ formulated a social group—persons in music videos depicting a scantily clad woman—that was not socially

-5-

distinct; (3) the IJ improperly found Mohamed to be a minority clan member, despite no evidence that Mohamed suffered past persecution because of his clan membership and no evidence that any fears of future harm were based on membership in his clan (the Benadiri clan); and (4) the IJ erred in granting withholding of removal because Mohamed did not demonstrate that it was more likely than not he would be persecuted on account of a protected ground if returned to Somalia. R. at 970.

The BIA reversed the IJ's grant of cancellation of removal, finding the IJ incorrectly weighed the adverse nature of Mohamed's lengthy criminal history and gave too much weight to his equities. R. at 935-36 (May 2018, BIA decision). In addition to the 2008 and 2017 convictions discussed by the IJ, the BIA recited other law enforcement contact, including Mohamed's arrests for financial card fraud and first-degree criminal sexual conduct as well as the issuance of numerous traffic citations. Id. at 936.[1] While upholding the IJ's finding that Mohamed testified credibly, the BIA noted that Mohamed had a spotty work history, minimally supported his five United States citizen children, and his own needs were being met by his family. The BIA concluded that Mohamed's equities did not outweigh "his serious, repeated criminal history." Id. at 936. As to the IJ's grant of asylum, the BIA determined that the delineated social group of Somalis in the United States who

---

[1]The record contains exhibits submitted by DHS regarding 22 petty traffic offense violations and citations from 2000-2007; a 2005 arrest in Minnesota for theft (charge later dismissed); a 2006 arrest in Wisconsin for dealer possess/untax control substance and possession with intent to deliver non-narcotics (resolved on a deferred prosecution); a 2007 arrest in Minnesota for fifth-degree assault and domestic assault (charges later dismissed); a 2008 arrest in Minnesota for financial transaction card fraud (charge later dismissed); a 2008 federal conviction for possession of khat (sentenced to time served); a 2009 arrest in Minnesota for driving under the influence and open bottle (charges later dismissed); a 2010 arrest in Minnesota for first-degree criminal sexual conduct, terroristic threats, and third-degree criminal sexual conduct (charges later dismissed); a 2011 arrest and citation in Minnesota for driving after suspension and operating an uninsured vehicle; and a 2017 conviction in Minnesota for two counts of insurance fraud—employment of runners (sentenced to 364 days in jail suspended and ordered to pay restitution).

have produced music videos involving partially clothed women is not socially distinct, as Mohamed appears to be the only member of the group. Id. at 937. According to the BIA, the IJ further erred by not considering DHS's rebuttal evidence showing that Benadiri and Reer Hamar clan members can safely relocate to Mogadishu and are rarely targeted by other clans. The BIA remanded the record to the IJ to reevaluate Mohamed's eligibility for asylum and withholding of removal and instructed her to evaluate Mohamed's eligibility for protection under the Convention Against Torture ("CAT").

On remand, the IJ denied Mohamed's applications for asylum and CAT relief and granted withholding of removal. No new evidence or testimony was presented. In her decision, the IJ found that Mohamed's positive equities and the danger of his persecution in Somalia do not outweigh his criminal history to merit a favorable exercise of discretion for asylum. R. at 310-11 (September 28, 2018, IJ decision). She also noted the Somali government's substantial military efforts to fight al-Shabaab rebutted Mohamed's claim for CAT relief. Id. at 319-20.

As to withholding of removal, the IJ found that Mohamed will more likely than not be persecuted based on his religion or imputed religion as a Muslim who does not conform to the strict version of Islam that the Islamist extremist al-Shabab requires. Id. at 313-14. The IJ pointed to the testimony from Mohamed and several witnesses regarding Mohamed's music video posted on the Internet, showing Mohamed dancing with a woman not fully clothed, which "drew sharp criticism" and online threats. The IJ recounted Mohamed's testimony regarding the threats he purportedly received in the video comments section and via social media from who he believed was al-Shabaab as well has the testimony from Mohamed's wife and father who believe Mohamed will be killed if returned to Somalia because of the video depicting him engaging in "Westernized" behavior. The IJ further noted that Mohamed's status as a musician may also cause him to stand out for punishment and harm at the hands of al-Shabaab because al-Shabaab detains people under inhuman conditions for listening to music. Finally, the IJ found Mohamed, as a member of the Benadiri minority group, will lack clan protection in Somalia, be more vulnerable

to attack by al-Shabaab, and will be subject to harm anywhere in Somalia so internal relocation is not possible or reasonable. Because the Somali government is unable to control the persecutor—al-Shabaab—the IJ found Mohamed had satisfied his burden and granted his application for withholding of removal on account of his religion. Id. at 314-15. The IJ denied Mohamed's application for withholding of removal on account of his clan membership. Id. at 316-18.

DHS again appealed, asserting: (1) the IJ provided a ground for withholding of removal (religion-based protection) that was not developed by Mohamed and in so doing improperly conflated Mohamed's religion with his prior activities as a musician,[2] and (2) Mohamed failed to present objective evidence that the alleged Internet threats were made by al-Shabaab or that al-Shabaab was aware of Mohamed's music videos. R. at 287. The BIA found DHS had not been given a full and fair opportunity to rebut the IJ's findings regarding a religion-based claim. R. at 240 (July 2, 2019, BIA decision). It explained that while Mohamed's asylum application listed religion as a possible protected ground, during the remanded proceedings Mohamed only addressed his clan membership as a basis for relief. Id. at 241. The BIA put both parties on notice that DHS "should have an opportunity to explore the source of the YouTube threats because, although [Mohamed] expressed his belief that the threats were made by al-Shabaab in Somalia, he was unable to corroborate his opinion with objective evidence identifying the source of the threats." Id. The BIA affirmed the IJ's decision regarding clan membership, remanded for consideration of the religion-based claim, and requested clarification

_____

[2]In its brief for the first BIA appeal, DHS counsel quoted the IJ's decision that there "could be a religious aspect too . . . of the video being unacceptable to the Muslim faith," and recognized that the IJ based her decision on "one or all of these reasons," including religion. R. 893 (Mar. 7, 2018, DHS Br. at 16). In briefing the second BIA appeal, DHS counsel contradicted these statements, writing that "a religious nexus . . . had never been at issue in the proceedings," and "[t]here was never any discussion on the record of religion as a ground." R. 269-71 (Dec. 6, 2018, DHS Br. at 7-9). The BIA did not address this contradiction, but its silence—and this Court's denial of review—do not constitute approval of DHS counsel's lack of candor.

on the IJ's discretionary determination pertaining to the asylum claim. Id. at 240-41.

On remand, the case was assigned to a different IJ because the initial IJ had retired. At the hearing, DHS's counsel initially informed the IJ that she wanted to conduct additional cross-examination of Mohamed but, after counsel for both parties engaged in an off-the-record conversation, DHS elected not to ask any questions. R. at 152-55 (Sept. 12, 2019, transcript). No additional testimony was presented by either party. Both parties, relying on the evidence submitted and prior findings made by the BIA and IJ, presented thorough arguments to the IJ. Mohamed argued that the initial IJ's credibility findings regarding the threats he received because of the music video had been upheld by the BIA, and the evidence showed a sufficient nexus of fear of religious persecution by al-Shabaab, an organization seeking to implement "an Islamic ethnostate" in Somalia, directed at Mohamed based on the music video he produced that was not in accordance with Muslim tradition. Id. at 157-58. In contrast, DHS argued the record, at most, showed fear of persecution based on Mohamed's work as a musician, which is not a religion-based claim. Id. at 161. DHS also pointed to statements in a country conditions report, which noted that the greatest risk for the civilian population living in Somalia is "being in the wrong place at the wrong time," as the vast majority of attacks are on military targets, government officials, security officers, and people associated with the government. Id. At the close of the hearing, over Mohamed's objections, the IJ explained that she was not ready to issue an immediate decision and would prepare a written decision, as she needed more time to review the voluminous record "with a fine tooth comb," consider the parties' arguments, refer back to the parts of the record that were raised by the parties during the hearing, and examine other aspects of the record she had flagged. Id. at 171.

In October 2019, the IJ issued her decision denying Mohamed's application for asylum on the grounds that he failed to demonstrate a well-founded fear of persecution based on religion or clan membership. R. at 112-16 (Oct. 15, 2019, IJ decision). The IJ reasoned that while Mohamed had expressed a subjectively

genuine fear of persecution based on the posting of the music video, he had failed to demonstrate his fear was objectively reasonable. Id. at 112. The IJ noted Mohamed's claim was based on a single music video he posted online in 2013, which was subsequently removed shortly after it was posted and has remained inaccessible since that time. The IJ also noted no evidence of any recent or immediate threats against Mohamed had been presented. Id. at 113. While crediting the testimony of Mohamed and his witnesses, who believed the online threats in response to the music video came from members of al-Shabaab, the IJ found the record contained no objective, corroborating evidence to support a conclusion that the persons who made the threats were affiliated with al-Shabaab. Id. The IJ further found that Mohamed failed to show a reasonable possibility of persecution by al-Shabaab on account of his clan membership.

Because the video was insufficient to demonstrate Mohamed is a public figure in Somalia, as Mohamed had argued, the IJ found that it was possible and reasonable for Mohamed, an average Muslim citizen, to internally relocate to an urban area, such as the capital city of Mogadishu, where he would not be targeted. Id. at 114, 116. Based on these findings, Mohamed's application for withholding of removal failed and the IJ declined to review the previous IJ's CAT analysis because neither party challenged that ruling on appeal. Id. at 117.

In Mohamed's notice of appeal to the BIA, he claimed the BIA erred in three ways: (1) by accepting DHS's prior appeal on the ground that DHS did not have a full and fair opportunity to rebut the IJ's finding on his religion-based claim; (2) by reversing the IJ's discretionary grant of cancellation of removal and asylum without first finding the IJ made a clearly erroneous factual finding; and (3) by violating Mohamed's due process rights due to the significant delay caused by DHS's two prior appeals. R. at 106. In his brief, Mohamed altered his claims, arguing that remand was necessary because the transcript for the September 12, 2019, hearing was not provided to him and he was not given a transcript for a September 25, 2019, hearing that the IJ referenced in her decision. R. at 61. Mohamed also argued the IJ erred by exceeding the scope of the BIA's remand. Id. at 63-65. Given the BIA's

silence throughout the proceedings on DHS's claim that Mohamed had failed to corroborate his testimony about fears of persecution by al-Shabaab and DHS's failure to present evidence to rebut the previous IJ's findings regarding his religion-based claim, according to Mohamed, the IJ should have reissued the previous decision without further analysis. Id. at 64-65. In the alternative, Mohamed argued the IJ erred by arbitrarily requiring him to corroborate the testimony about threats he received from al-Shabaab. Id. at 66-69.

The BIA denied Mohamed's request to remand, finding the IJ made a typographical error as to the date of the hearing referenced in her decision and the other purported missing transcript had been incorporated into the record and issued to Mohamed. R. at 15-16 (May 17, 2021, BIA decision). Finding no factual error, no erroneous application of the law, or no improper exercise of discretion by the IJ, the BIA dismissed Mohamed's appeal. More specifically, the BIA determined that Mohamed waived by not meaningfully contesting the IJ's findings of fact and legal conclusions relating to his future fears of harm in Somalia on account of his religion or the possibility that he could reasonably relocate to an urban area in Somalia and not be targeted by al-Shabaab. Id. at 12-13. The BIA also determined the IJ acted within her discretion by giving diminished weight to the uncorroborated testimony of Mohamed and his family regarding the purported online threats they had observed in 2013. Id. at 13. Finally, the BIA concluded that the IJ did not exceed the scope of the remand. Id. at 14-15.

Mohamed argues on appeal to this Court that the BIA's decisions should be reversed and vacated because the BIA violated the waiver rule and improperly overturned the IJ's 2018 decision granting Mohamed withholding of removal based on the protected ground of religion. If the Court reaches the merits, Mohamed contends that the order of removal should be reversed and remanded for two reasons: (1) no additional corroborating evidence of the threats in response to the music video was required, and (2) the BIA failed to apply the correct standard when considering whether Mohamed could reasonably relocate internally under all circumstances, and instead erroneously focused on whether he could reasonably relocate to avoid

persecution. In response, DHS contends we lack jurisdiction to review Mohamed's claims because he has not raised a colorable constitutional claim or meritorious question of law and, in any event, Mohamed's arguments lack merit.

## II. DISCUSSION

We first consider the scope of our jurisdiction. If the petitioner is a criminal alien under 8 U.S.C. § 1252(a)(2)(C), "our jurisdiction to review final orders of removal . . . 'is limited to constitutional claims and questions of law.'" Sharif v. Barr, 965 F.3d 612, 618 (8th Cir. 2020) (quoting Hanan v. Mukasey, 519 F.3d 760, 763 (8th Cir. 2008)); see 8 U.S.C. § 1252(c)(2)(D). Mohamed was found removable for having been convicted of a controlled substance offense. He has not challenged the applicability of the criminal alien bar as applied in his case.

Mohamed limited his claims on appeal to his application for withholding of removal. Pet. Br. p. 23 (requesting reinstatement of the IJ's 2018 order granting withholding of removal and, in the alternative, remand for further consideration of his claim for withholding of removal). When considering his claims, "we lack jurisdiction to review factual findings and may only review constitutional claims or questions of law." Id. at 619 (cleaned up). We also may review mixed questions of law and fact, including the "application of a legal standard to undisputed or established facts." Guerrero-Lasprilla v. Barr, 589 U.S. __, 140 S. Ct. 1062, 1067 (2020).

"In evaluating whether a petition raises a constitutional claim or question of law, we look to the 'nature of the argument advanced in the petition.'" Sharif, 965 F.3d at 619 (quoting Purwantono v. Gonzalez, 498 F.3d 822, 824 (8th Cir. 2007)). If a claim "merely constitute[s] a brief in opposition to the BIA's factual findings," we are without jurisdiction to redress it. Id.

Mohamed asserts the BIA legally erred in 2019 when it reversed the IJ's 2018 decision that was favorable to him and allowed DHS an opportunity to submit

-12-

evidence on his religion-based claim. In its decision, the BIA drew two significant legal conclusions: (1) the burden of production on the religion issue never shifted to DHS during the remanded proceedings because Mohamed failed to address religion as a basis for relief, and (2) DHS was entitled to "an opportunity to explore the source of the YouTube threats because, although [Mohamed] expressed his belief that the threats were made by al-Shabaab in Somalia, he was unable to corroborate his opinion with objective evidence identifying the source of the threats."

Mohamed has presented no cognizable basis that would prohibit the BIA from remanding for development of the record on an issue that the record shows was not plainly argued or developed. While Mohamed asserted generally that he was threatened by al-Shabaab and Muslim families because of the music video, he never explicitly claimed that he was being threatened because he was Muslim. Collateral estoppel is inapplicable because all decisions at issue were made at different stages of the same action. See Estrada-Rodriguez v. Lynch, 825 F.3d 397, 402 (8th Cir. 2016) (noting collateral estoppel does not apply when an issue has not been previously determined by a valid and final judgment in a prior action between petitioner and DHS). Application of the law of the case doctrine is discretionary in immigration proceedings and unless the BIA qualifies or limits the remand to a specific purpose, we will not find an abuse of discretion when an IJ reconsiders a prior determination on an issue. Id. at 402-03; N'Diaye v. Barr, 931 F.3d 656, 664 (8th Cir. 2019). Mohamed improperly equates the IJ's and BIA's findings that he offered credible testimony as also establishing he presented sufficient evidence in support of his claim. These are distinct concepts. We can find no constitutional claim or legal error arising from the BIA's decision to remand to allow the record to be fully developed regarding the nature and source of the threats Mohamed received while working as a musician and posting a video of him appearing with a partially clothed woman and whether those threats were tied to his religion.

Mohamed next claims that the BIA erred as a matter of law in 2021 when it upheld the IJ's decision requiring him to submit corroborating evidence regarding the threats he received because the initial IJ did not require such evidence. The

parties dispute whether the evidence was sufficient to establish the objective reasonableness of Mohamed's fear—a legal question reviewed *de novo* by the BIA and this Court, Uzodinma v. Barr, 951 F.3d 960, 964 (8th Cir. 2020). Even if the uncorroborated testimony is deemed credible, the burden remains on the applicant to corroborate an asylum claim. Id. at 965. "An applicant's uncorroborated testimony may be sufficient if it satisfies the trier of fact that the testimony is credible, persuasive, and fact-specific enough to show that the applicant is a refugee." Id. (citing 8 U.S.C. § 1158(b)(1)(B)(ii). Here, Mohamed's uncorroborated testimony was deemed insufficient by the fact finder.

It is indisputable that there is no objective evidence in the record to corroborate the testimony from Mohamed and his family members regarding the music video he posted or the nature or source of the alleged threats. While Mohamed represented that he had copied the information onto DVDs, no video was ever submitted or transcribed, although Mohamed had ample opportunity to do so. While 8 C.F.R. § 1003.1(d)(3) designates the IJ as the trier of fact, we have found harmless error even when the BIA, and not the IJ, required an applicant to present corroborating evidence to satisfy his burden of proving he faced a particularized threat of persecution. Id.

Contrary to his arguments, Mohamed was placed on notice by the BIA's 2019 decision that he had not corroborated his beliefs about the source of the threats with objective evidence. Despite this notice, Mohamed did not submit any objective corroborating evidence. Neither did DHS attempt to refute Mohamed's previous testimony. Despite the parties' lack of diligence, the record supports the final decisions by the IJ and BIA that Mohamed failed to satisfy his burden of showing a particularized threat of persecution, rendering him ineligible for asylum and likewise withholding of removal. See Baltii v. Sessions, 878 F.3d 240, 246 (8th Cir. 2017) (noting that when an applicant fails to meet his burden of proof for asylum, he necessarily cannot meet the higher burden of proof required for withholding of removal, which requires demonstrating a clear probability that he will be persecuted on account of his membership in a particular social group). As noted by the BIA,

-14-

the music video at issue was created and posted by Mohamed. Mohamed testified that he copied the threats he received onto DVDs but they were never produced or transcribed. Mohamed's only explanations were technical difficulties, and the information was inaccessible or had been corrupted. Finding no reasonable explanation for the failure to obtain or produce corroborating evidence, the agency did not err or violate Mohamed's constitutional rights by giving the testimony diminished weight and finding Mohamed had failed to satisfy his burden of proof. Cf. El-Sheikh v. Ashcroft, 388 F.3d 643, 647 (8th Cir. 2004) (explaining that the BIA's reliance on the absence of corroborating evidence is unsustainable only when there is a failure to rule on the credibility of the applicant's testimony, to explain why it was reasonable to expect additional corroboration, or to assess the sufficiency of the applicant's explanations for the absence of corroborating evidence). The IJ acted within the scope of the remand and, contrary to Mohamed's assertion, we find no basis or authority requiring an IJ on remand to reissue a prior decision merely because the parties elected to rest on the previously submitted evidence.

Lastly, Mohamed contends the BIA erred by ignoring the country conditions evidence in the record and committed reversible error by holding that Mohamed could relocate internally within Somalia to avoid persecution, rather than whether it would be reasonable for Mohamed to relocate under all circumstances. The BIA, however, merely recounted the IJ's factual findings and legal conclusion on these issues and found Mohamed had waived these claims by failing to meaningfully contest the findings and conclusions. Nonetheless, because Mohamed is ineligible for withholding of removal because he cannot show future persecution on account of a protected ground, we decline to consider Mohamed's arguments regarding internal relocation. See Gutierrez-Vidal v. Holder, 709 F.3d 728, 733 n.2 (8th Cir. 2013) (noting that when the BIA does not expressly adopt an IJ's determination, the issue is not properly before us and finding that applicant is not eligible for relief when he failed to demonstrate harm amounting to persecution, even if there is an alleged error regarding relocation).

## III. CONCLUSION

For the foregoing reasons, we deny the petition for review.

_____